WILLIE WICKES *vs.* ROBERT WICKES et al., and
JAS. W. STEVENS, Purchaser.

*Adverse Possession of Land Against Tenant in Tail—Running of Stat-
ute of Limitations Against an Infant After Removal of Disability—
Adverse Possession of Land by Purchaser at Judicial Sale—Dissei-
sin Enures to Heirs of Disseisor—Estate Tail General Created
Prior to Act of 1786—Exception to Judicial Sale for Invalidity of
Decree—Appeal from Order Not Final.*

Twenty years adverse possession of land against a tenant in tail bars the
right of entry of the issue in tail.

Statute of 21 Jac. I, ch. 16 (in force in Maryland), prescribes that no per-
son shall make entry upon land but within twenty years next after his
right or title shall first descend or accrue, provided that if he be under
the age of twenty-one years when his title accrues, such, person or his
heirs may bring his action within ten years next after his full age. *Held*,
that when the disability of infancy ceases while the prescribed period
of twenty years limitation is running, the ten years given to the person
subject to the disability will run concurrently with the twenty years and
not successively to it.

Title to land accrued to an infant on May 15th, 1871. The land was taken
possession of in 1873 by a person holding under color of title and was
thereafter possessed by that person and those claiming under him. The
infant came of age on May 2nd, 1892. *Held*, that the ten years allowed
by the saving clause of the statute within which to make entry or bring
an action of ejectment expired on May 2nd, 1902.

When the purchaser of land at a judicial sale enters into possession his
·holding is adverse to the true owner, and such adverse possession en-
ures to the benefit of the heirs of the purchaser, the possession of the
latter being tacked to that of the former so as to constitute a continu-
ous adverse possession.

When a person has been disseised of land, an entry by him sufficient to
break the continuity of the adverse possession must be an actual entry
upon some part of the land, within the period of limitations, made with
intent to invade the right of the disseisor and to retake possession.

When an action of ejectment is brought by a party disseised within
twenty years after the ouster, it is not necessary for the plaintiff to prove
actual entry by him on the land.

If the person disseised be one of several heirs of the disseisor, the mere
constructive possession of an undivided interest in the land as such
heir upon the death of the disseisor is not such an entry as will break

the adverse holding; nor does such joint possession draw the whole possession to the person disseised as having the superior title.

The fact that a party did not know that he was legally entitled to certain land, or was mistaken as to the true ownership, does not prevent the running of the Statute of Limitations against his right of entry.

When a decree directing à sale to be made was passed within the jurisdiction of the Court and in conformity with the allegations of the bill and the evidence in the case, no exception to the sale thereunder can be made on grounds which were concluded by the decree, but such decree must itself first be set aside or reversed on appeal.

The owner in fee of a tract of land died 1732, leaving a will by which he devised the land to his son Samuel, "to him and the heirs of his body lawfully begotten forever, and if in case it should please God my son Samuel shall happen to die without such lawful heirs as aforesaid, the aforesai lands to descend to the next heir of blood according to law." This devisee made a like devise of the land to his eldest son and common law heir. The eldest son of the latter devisee, who had been in possession of the land, died before 1852, leaving a son, James, and two daughters. It was supposed that the land descended to all of them in fee and James took deeds of their interests from his two sisters. James died in 1869, intestate, leaving several children, the oldest son being William, who occupied the land and paid rent therefor to his brother and sisters until his death in 1871, leaving the appellant, Willie, his only child and heir at law, an infant born in the same year. This appellant now claims to be entitled to the whole tract of land as tenant in tail under the limitation in estate tail general created in 1732 by the will of the then owner of the land. The Act of 1782, ch. 23 (Code, Art. 21, sec. 24), authorized any person seised of an estate tail in land to sell and convey the same as if he were seised of an estate in fee-simple. The Act of 1786, ch. 45 (Code, Art. 46), directed that if any person seised of an estate in fee-tail should die intestate thereof, such land should descend in fee-simple, but provided that the statute should not affect any entail created before January 1st, 1783. No person seised of the estate tail in this case had conveyed the same under Code, Art. 21, sec. 24, or had docked the entail in any manner effective prior to 1783. In the year 1872, a bill in equity was filed by some of the children of James, above mentioned, against the others and against the appellant in this case, the daughter of William, asking for a sale of the land for the purpose of partition. A decree was passed and the land was sold and conveyed to Charlotte, the widow of James, who held and possessed the property under a claim of right until her death in 1900. The bill in this case was subsequently filed for the sale of the land as property of which Charlotte had died seised, intestate. The appellant, Willie, was a party to the bill and answered admitting its allegations and consenting to a sale. A trustee was appointed who reported a sale of the land in May, 1902. In September, 1902, Willie for the first time set up her above-mentioned claim to the

exclusive ownership of the land as tenant in tail, alleging the recent discovery of her rights and that her answer was by mistake. She excepted to the ratification of the sale and asked for an annulment of the decree. *Held*, that even assuming that the will of 1732, created an estate tail general and that William and the prior tenants of the land were seised as tenants in tail, and that the appellant as the only child of William is tenant in tail thereof, yet her claim as such tenant in tail had become barred by limitations and the adverse possession from 1873 of Charlotte and those claiming under her, because upon the appellant's coming of age in May, 1892, she then had ten years under the statute of 21 Jac. I., in which to bring an action of ejectment, and not having done so, and having made no effective entry on the land, the statute became a bar to her right in May, 1902.

In the above case before the passing of the order ratifying the sale of the land, the trial Court passed an order holding that the will of Samuel in 1732, created an estate tail general which had not been docked; that William, the father of the appellant, was seised as tenant in tail of the land, and that the appellant, his only child, is tenant in tail thereof, unless said estate has been barred and destroyed by the adverse possession of Charlotte and those claiming under her. *Held*, that appeals taken from this order be dismissed because it is not a final order.

Appeal from the Circuit Court for Kent County (PEARCE, C. J., MARTIN and BROWN, JJ.) A part of the answer of Willie Wickes to the petition of the purchaser is as follows :

4. She shows and submits to this Honorable Court that the second, fourth, fifth and thirty-fifth paragraphs of the said petition do not admit conveniently of categorical answer, because, while the occurrences therein alleged took place very nearly as in the paragraphs set forth, the conclusions drawn therefrom and the light wherein the said occurrences are presented to the Court are erroneous and misleading ; wherefore, as her answer to the said four paragraphs she submits the following statement :

I. This respondent's father, William H. Wickes, became and entered as tenant in tail of Wickliffe upon the death of his father, James P. Wickes, in February, 1869, immediately thereafter a wholly groundless and erroneous claim was set up on behalf of the widow, who then remained at Wickliffe under her quarantine, and the other children of the said James, that he, the said James, had been seized of Wickliffe in fee-simple ; which said groundless and erroneous claim was evidently al-

together adverse to the interest of the said William, as such tenant in tail, as aforesaid ; so that, in dealing with the same, the said William, as such tenant, and the said claimants could not, according to the principles of equity, be represented or properly advised by the same counsel. Nevertheless one Richard Hynson, then a solicitor of this Honorable Court, now deceased, who was counsel for the said claimants, acted at the same time as legal adviser to the said William and, while guided by his advice, the said William was led to believe the groundless and erroneous claim aforesaid well founded ; in which belief so induced by what in the view of this Honorable Court, amounted to a surprise upon the said William and a constructive fraud on the part of the said counsel to the said claimants and, by relation, on the part of the claimants themselves, whatever may have been his or their innocence of evil intent in the premises. The said William died in May, 1871, leaving this respondent, then but thirteen days old, his only daughter and living at and the succeeding tenant in tail of Wickliffe. Immediately thereupon this respondent became, especially in the contemplation of a Court of conscience, not only entitled to the possession, but actually possessed, of Wickliffe, as such tenant in tail as aforesaid. Nevertheless by what amounted in the view of such a Court as lastly aforesaid, to a further surprise and constructive fraud, as well upon this respondent, then a helpless infant in her capacity as such tenant in tail as upon this Honorable Court itself, the suit (No. 339 Equity) of *Strong et al.* v. *Wickes et al.*, mentioned in the said petition was instituted under the advice and by the procurement of the above mentioned Richard Hynson, solicitor as aforesaid, to obtain a partition of Wickliffe, among the heirs at law of the said James P. Wickes the wholly false statement being made in substance in the pleadings that the same had belonged to him, the said James, in fee, and the actual state of the title being altogether misrepresented to the Court ; whereupon this Honorable Court, being so as aforesaid completely misled in the premises, decreed a sale thereof for purposes of partition, appointing the said Richard Hynson trus-

tee to make such sale ; and in March, 1873, the said sale was professedly made by the said trustee to Charlotte A. Wickes, the aforesaid widow of the said James P. Wickes ; and in November, 1877, a deed was recorded professing to convey to her the said Charlotte, the said farm or plantation of Wickliffe, and to be made by the said Hynson, as such trustee as aforesaid. And this respondent submits that the whole of the said proceeding was as affecting her rights constructively fraudulent and void *ab initio*, that no legal title passed to the said Charlotte by the said alleged deed and that any subsequent professed taking possession of Wickliffe, on her part, whether by pernancy of profits or otherwise, would be held, in the view of a Court of equity, not adverse to, but under the rightful holder, to-wit, this respondent, to whom the said Charlotte always remained liable to account for such profits.

II. This respondent further submits that no person with actual or constructive notice of the invalidity of her title could obtain any equitable lien upon Wickliffe by or through any mortgage thereon given by the said Charlotte professedly as owner under the alleged deed from the said Hynson as trustee ; and that the matters of record referred to in the said petition gave ample constructive notice to all persons of the invalidity of her said title ; so that any such mortgage has always been and is now of even less validity in equity than at law. Nevertheless three such mortgages appear to have been made by the said Charlotte, as alleged in the fifth paragraph of the said petition for some purpose unknown to the respondent, although it has been suggested to this respondent that, the purpose of giving such mortgages may have been to provide for payments made or to be made, by the said Charlotte or the said Hynson as trustee to the heirs at law other than this respondent of the said James P. Wickes (who or whose representatives are now likewise the heirs at law of the said Charlotte and the remaining parties to the present suit) for their alleged interests in the purchase-money of Wickliffe ; if such shall prove to be the case, this respondent shows that none of the said several heirs of the said James ever had, in

fact, any interest whatever in Wickliffe, for which they could be entitled to receive any compensation. But, according to the knowledge and belief of this respondent, no part of the said money was ever paid to or expended or reserved for the benefit of this respondent, either as tenant in tail or individually, nor has either this respondent or, according to her knowledge and belief, the estate of inheritance in Wickliffe, derived any advantage from the proceeds of the said encumbrances. A judgment appears likewise to have been confessed by the said Charlotte A. Wickes, to one Laura J. Stevens, as alleged in the said fifth paragraph of the said petition ; but this respondent shows and submits to the Court that in view of the premises the same has never constituted any lien, either legal or equitable, upon Wickliffe and that neither as tenant in tail nor as an individual can this respondent be held, either at law or in equity, liable for the same, whether in whole or in part.

III. After the death of the above mentioned Charlotte A. Wickes this respondent was informed, in substance, that one Hope H. Barroll, a solicitor of this Honorable Court, and the trustee in the present cause, who was at the time acting as legal adviser to the right heirs of the said Charlotte, including this respondent, believed it would be to the advantage of the said heirs for him, the said Barroll, to procure assignments of the said mortgages and judgments to himself, inasmuch as the several creditors were pressing for payment and there was danger lest Wickliffe should be sold at a great sacrifice to meet their claims, and that he, the said Barroll, was willing to furnish the money needed for this purpose in order to advance the interests of the said heirs. This respondent did not request or in any wise suggest to the said Barroll to do this, nor did he ask her consent thereto or approval thereof— although he subsequently requested her to sign and seal an acknowledgment of the amount so paid by him as of the date of such payment to-wit, March 21st, 1900, and she is unable to say with absolute certainty whether she received this information before or after the said mortgages and judgment were actually assigned to him; but, according to her best recollec-

tion it was, and she therefore charges that it was after such assignment. She made no objection to his receiving the said assignment, and believed then and now believes that his action in so doing was intended in good faith, for the benefit of the right heirs of the said Charlotte, and was inspired by a kindly interest in their welfare, and she shall be sorry to see him suffer any loss by reason thereof nevertheless she shows to the Court that the information so given her as the opinion of her said counsel was completely erroneous, and that the assignment to himself of the said mortgages and judgment was, and could be, of no possible advantage to her, as such tenant in tail of "Wickliffe" as aforesaid. And she further submits that the existence and assignment of the said mortgages and judgment could and can in no possible way affect the rights of the said petitioner, and that the possible rights of the said Hope H. Barroll as such assignee as aforesaid, whether against this respondent or against the said property, if any such rights he have, are altogether irrelevant to the present controversy.

IV. This respondent was informed by the said Hope H. Barroll about or shortly before the time of the institution of the present suit that it would be necessary to sell "Wickliffe" for purposes of partition among the right heirs of the said Charlotte A. Wickes, which information was, in fact, wholly erroneous, but was believed by her to be true; and she was subsequently requested by him, the said Barroll, to sign and seal the answer (which he had prepared) afterwards filed in this cause; which she did, relying upon the misleading information so furnished her, and would not have done had she known or suspected her rights in the premises. This respondent does not in the least question the entire actual good faith of the said Barroll in the premises, nevertheless she submits to the Court that, for the same reasons which have been hereinbefore called to the Court's attention respecting the similar relations of the late Richard Hynson to her late father, the said Barroll, being in fact counsel to those whose interests in this case were and are directly adverse to hers, as such tenant in tail as aforesaid, could not in the view of a Court of

conscience act simultaneously as legal adviser therein to this respondent, and that she not only was in fact, as she appears to be of record, *inops consilii* in the present cause, but in the view of a Court of equity was the victim of a surprise and a constructive (however morally innocent) fraud; and for these reasons she shows and submits to the Court that her ignorant and improvident assent in the assent in the answer to the wholly unauthorized sale of the property decreed to be sold and admission of the wholly false statements contained in the bill of complaint are and must be held in *foro conscientiæ* altogether null and of none effect.

V. This respondent became an orphan by the death of her mother when she was but twelve years of age; all her nearest relatives were parties to the above described various irregular, void and constructively fraudulent proceedings; she was successively advised respecting her rights in and to "Wickliffe," by the said Hynson and the said Barroll, both of whom at the time of such advice, were likewise of counsel to the parties whose claims thereon and alleged interest therein were, so as aforesaid, altogether adverse to hers, as such tenant in tail, as aforesaid; and she could not be reasonably expected to have and had not in fact, the slightest suspicion that her father, herself and this Honorable Court had all alike been surprised, misinformed and misled in the premises; until in the month of July past she was informed by the said Hope H. Barroll of the results of the search of title ·made by one Frederick W. Story in the interest of the said petitioner, as alleged in the eleventh paragraph of the said petition the said Barroll, with obvious propriety, simultaneously advised this respondent to consult other counsel. This respondent thereupon acted upon the said advice of the said Barroll, and employed independent counsel; and as soon thereafter as her said counsel and she herself sufficiently understood her rights in the premises, she promptly informed as well the said Hope H. Barroll as the said Frederick W. Story, and, through them, all the other parties to the cause, and the said petitioner, of her firm intention to assert her said rights to the full extent to

which, in good conscience and propriety, according to her own judgment, she could and might assert them. And she expressly and particularly denies that she has been in any wise whatever negligent, remiss or guilty of laches in the premises.

5. This respondent admits that, if she had been in fact disseised of "Wickliffe" by ouster, she would have become entitled and would be now entitled to the benefit of the saving clause contained in the Statute of James I, mentioned in the thirty-sixth paragraph of the said petition, by re-entry within ten years next after attaining her majority, as is in the said last-mentioned paragraph alleged, and she prays the benefit of the said saving clause of the Statute of James aforesaid, should the same become or be held relevant or material to her rights. But this respondent denies that she was, in fact, ever disseised by the ouster or otherwise, of "Wickliffe" either by her grandmother, the above-mentioned Charlotte A. Wickes, or by any other person or persons whatsoever; and she avers and shows to the Court that she never suffered any actual ouster therefrom at all, nor any constructive ouster in the view of a Court of equity.

*Third.* And, without waiving the benefit of her aforegoing answer or any part thereof, this respondent specially excepts to all those portions of the said petition and all those averments therein contained which she has hereinbefore submitted to be immaterial or irrelevant, whether the same or any thereof have or have not been above admitted, denied or otherwise answered.

*Fourth.* And, having fully answered the said petition, she prays that she may be dismissed; but, for reasons hereinabove contained she further prays that the sale reported by the trustee in this cause be set aside, the decree of June 6th, 1900, stricken out and the bill of complaint dismissed, as is likewise prayed in an exception and a petition filed or, as soon as may be, to be filed by her in the said cause.

And, as in duty, &c. Charles J. Bonaparte, Solicitor for above Respondent.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, SCHMUCKER and JONES, JJ.

*Wm. Pinkney Whyte* and *Charles J. Bonaparte,* for the appellant, Willie Wickes.

*James P. Gorter* (with whom was *Hope H. Barroll* on the brief), for Robert Wickes *et al.,* appellees.

*Frederick W. Story,* for Stevens, purchaser.

JONES, J., delivered the opinion of the Court.

In this case the controversy has respect to real estate which was sold under a decree of the Circuit Court for Kent County. The record brings up four appeals. Three of these are from the action of the Court in regard to certain questions which, in the course of proceedings had pending the ratification of the sale, were submitted to it for adjudication as being within the provisions of sec. 183 of Art. 16 of the Code; and the fourth is from the order of the Court overruling exceptions filed to the ratification of the sale by Willie Wickes, appellant in No. 10 of the Appeals, dismissing a petition in which she asked leave to amend her answer to the bill of complaint and for other relief; and finally ratifying the sale as reported.

The controversy in the case arose from a claim of title to the property sold, set up by the said appellant in No. 10 of the Appeals, after sale made and pending ratification of the same. This claim is that the property sold is the subject of an estate tail general and that said estate is now vested in the said Willie Wickes by inheritance in regular course of descent from the first tenant in tail, and rests on the following facts. Samuel Wickes of Kent County who died in the year 1732 was seized in fee-simple of the property in controversy, and by his will of date September the 5th, 1729, devised it as follows: "Item, I give, devise and bequeath unto my son Samuel Wickes all that tract or parcel of land and plantation with all the other appurtenances thereto belonging, containing by

estimation 370 acres more or less, called or commonly known by the name of 'Wickliffe' it being the land and plantation whereon I now dwell in the Eastern Neck Island, in the county of Kent, to him and the heirs of his body lawfully begotten forever, and if in case it should please God my son Samuel shall happen to die without such lawful heirs as aforesaid, the aforesaid lands to descend to the next heir of blood according to law forever."

Samuel Wickes, son of the above-named testator, and devisee in the foregoing devise held the land in question until he died in 1767 and by his will devised it as follows: "2nd. I give and bequeath unto my son Samuel Wickes, my dwelling plantation and all the land adjoining thereto to him and the heirs of his body lawfully begotten forever, and in case my son Samuel should die without such issue then to the next surviving heir and heirs of their body lawfully begotten forever." Samuel Wickes named as devisee in the last-mentioned devise was the oldest son and the common law heir of the Samuel who was the devisee in the first-mentioned devise. He entered upon and was possessed of the land mentioned during his life; and is supposed to have survived until after the passage of the Act to Direct Descents of 1786, ch. 45, and until after that Act went into effect, by its terms, as to estates tail, on the first of January, 1788.

At his death his oldest son, William Wickes, entered upon and held the said land until his death which occurred sometime before the year 1852. William Wickes left an only son, James P. Wickes, and two daughters. James P. Wickes entered upon and held the land during his life but apparently supposing that it was a fee-simple inheritance descending to all of his father's children in equal shares he took deeds from his sisters—each deed expressing that it conveyed an "undivided third part" of the land in question as "being the same lands which descended from the late William Wickes" to his "children and heirs at law." Both deeds were made for a money consideration which in one was "three thousand dollars" and in the other "two thousand and five hundred dollars."

James P. Wickes died intestate in the year 1869 leaving a widow and eight children. Of these children William H. Wickes was the oldest son, who with the widow, his mother, and the other children, except a married daughter, continued to reside upon and occupy the property in question. The widow and children of James P. Wickes seem to have regarded the property as he had, as descending as a fee-simple inheritance; and accordingly there was an arrangement among them by which William H. Wickes became tenant of the farm paying rent therefor to his mother and brothers and sisters; and it was testified that he continued "to farm the farm as tenant until his death which took place on May 15th, 1871." William H. Wickes left an only child who is the Willie Wickes heretofore mentioned as the appellant in Appeal No. 10 in this record; and who was born on the 2nd day of May, 1871, thirteen days prior to the death of her father, at Chestertown, Kent County, where her parents then were.

Such is the source of title and such the course of descent through which the appellant, Willie Wickes, claims to be vested with an estate tail general in the property in controversy.

The Act of 1782, chapter 23 (Code, Art. 21, sec. 24), provided that "any person seized of an estate tail in possession, or remainder, in any lands * * * may grant, sell and convey the same in the same manner and by the same form of conveyance as if he were seized of an estate in fee-simple" and that such conveyance should be good "against all persons whom the grantor might debar by any mode of common recovery or by any ways or means whatsoever." The Act of 1786, chapter 45, to direct descents in Maryland (Code, Art. 46) provided that if any person seized of lands in this State as of a fee-tail general should die intestate thereof such lands should "descend in fee-simple" but provided that the Act should not be construed "to alter or in any manner change the course of descent as heretofore used and established, so as to affect the case of any entail or limitation in tail whatever,

made, created and in being before the first day of January, 1788, but the same shall, during the continuance of the estate in tail or limitation in tail, and until the same may be legally destroyed or barred, descend according to the course of descent heretofore used and established."

According to the claim here set up of title in tail to the property in question the estate tail was in existence prior to January 1st, 1788 and was therefore within the exception provided in the Act of 1786.   It is not pretended that any person seized of said estate attempted to grant, sell or convey the same by any form of conveyance under the provisions of the Act of 1782, chapter 23; or to bar it in any mode recognized as effective for that purpose as the law stood prior to that Act.   Now if we assume upon the facts recited that the appellant, Willie Wickes, became, as she claims she did, upon the death of her father, entitled as tenant in tail to the land in controversy and to possess herself thereof as of an estate tail general, the record presents the further inquiry whether from the disclosures thereof such title has since become barred and defeated.

As appropriate to this inquiry the further facts disclosed by the record are that on the 15th of October, 1872, a bill was filed by the adult children of James P. Wickes against those of his children then minors and the appellant, Willie Wickes, as defendants, to procure a decree for a sale of the property here in controversy and of which he was possessed as aforesaid during his life, for the purpose of partition; and that the proceeds of sale might be distributed among the parties to the cause; the proceedings being the same as if the said James P. Wickes had been seized of the property in fee and the same had descended to his children in fee-simple under the Act to direct descents.   A decree was passed after the usual proceedings had by the Circuit Court for Kent County for a sale of the property and appointing a trustee to make sale.   The decree was dated the 7th of February, 1873, and the trustee reported the property as having been sold in March, 1873, to Charlotte A. Wickes, the widow of James P. Wickes and the

sale was finally ratified and confirmed. On the 13th day of November, 1877, a deed from the trustee to Charlotte A. Wickes was recorded in Kent County which referred to the property sold to her as being the same property of which the late James P. Wickes died seized and possessed a portion of which he inherited from his father and the remainder he acquired under two conveyances, &c., these conveyances being those made to him by his sisters as hereinbefore set out.

Under this sale and deed Charlotte A. Wickes held and possessed the property continuously until her death which occurred on the 3rd of February, 1900. It was testified that "from date of sale March, 1873, until her death she lived on the farm and had absolute possession of it, claiming under the deed the property to be her own." During her lifetime she executed three several mortgages on the property. For the year 1900 she had rented the farm to one Kelly who, at the time of her death, was farming it as her tenant and continued his tenancy to the end of the year. For the years 1901 and 1902 the farm was rented to one Newcomb by Mr. Barroll acting as attorney for all of the heirs of Charlotte A. Wickes; four of whom were living on the farm with her at the time of her death; and continued to live upon and occupy the same until January 1st, 1901, at or about which time one of them went to reside elsewhere; and the other three children took up their residence in a house built by them upon a lot of four acres—part of the farm in question—which they purchased from the other heirs of their mother, all of whom, including the appellant, Willie Wickes, executed to them a deed therefor. Willie Wickes never at any time lived or resided upon the property in question; and was never there in any capacity other than that of an occasional visitor.

On the 23rd of April, 1900, the case, which is before the Court upon the present appeals, was instituted. A bill was then filed for the purpose of having the property in question sold as real estate of which Charlotte A. Wickes died seized and possessed in fee-simple and intestate to the end that the proceeds of sale might be distributed among the heirs at law

of the said deceased.   Certain of these heirs appeared as plaintiffs and others, among whom was Willie Wickes, were made defendants.   All of the defendants united in an answer to the bill admitting the allegations thereof and consenting that a decree should be passed "for the sale of the said real estate, as prayed, so that the same may be divided among the heirs at law of the said Charlotte A. Wickes according to their several and respective rights."   A decree was accordingly passed on the 6th of June, 1900, appointing Mr. Barroll trustee to make sale.   The trustee reported a sale on the 29th of May, 1902, as having been made on the 27th of that month to James W. Stevens, who, on August 15th, 1902, filed in the cause a petition in which, after reciting among others, the facts which have herein been set out as to the source of title and course of descent of the property in question, he averred that Willie Wickes by the death of "Charlotte A. Wickes, her grandmother," had become seized of the same "as tenant in tail, according to the form of the gift as in the will of  *  *  * Samuel Wickes, the elder, is limited."   After stating reasons therefor he concluded the petition with a prayer that the said Willie Wickes be required to execute to him "a deed to bar the said entail, under the Act of 1782, ch. 23, now  *  * Art. 21, sec. 24," of the Code upon his compliance "with all the terms of sale as to him reported."

On the 6th of September, 1902, the appellant, Willie Wickes, filed in the cause a petition in which she alleged that she "signed and sealed the answer heretofore filed in this cause believing and having all reasonable grounds to believe all the material statements of the bill of complaint to be true;" that she had recently ascertained that the statement that Charlotte A. Wickes had "left a large and valuable farm," &c., was "entirely inaccurate and erroneous;" that the decree in the cause "was, in so far as the same related to said farm, erroneous, improvident and void;" and asked "that her name and seal appended to the original answer in this cause be removed therefrom;" that she have leave to file an amended answer to the bill; that the decree "be rescinded, stricken out

and annulled;" and that the bill of complaint be dismissed as "far as the same relates to the farm" mentioned. On the same day she filed an answer to the petition of Stevens, the purchaser, denying that he was entitled to the relief prayed in his said petition and stating at length the grounds of her defense. These it is not necessary to set out here. As far as they may be material to an understanding of the case they will appear in the report thereof. She further accompanied her petition and answer, just referred to, with the exceptions to the ratification of the sale in which she denied the jurisdiction of the Court to make the sale; denied that the parties to the cause, other than herself, had any interest in the property sold or in the proceeds of sale; denied that Charlotte A. Wickes left a farm at her death as alleged in the bill; and averred that she had recently become aware of the facts set forth in the exceptions "having ascertained them at the time, in the manner and under the circumstances which are shown by her answer" to the petition of James W. Stevens, purchaser.

The other parties to the cause, plaintiffs and defendants, united in an answer to the petition of Willie Wickes in which they put in issue the averments thereof; deny that she is entitled to the relief asked; and rely upon laches and limitations as a defense to the same. After other proceedings, not material to notice here, the Court below was asked upon petition by both the purchaser and the appellant, Willie Wickes, to hear and determine certain preliminary questions of law that were suggested in the petitions as being raised by the pleadings; and based the application upon sec. 183 of Art. 16 of the Code. The Court accordingly heard argument upon questions thus presented and on the 26th of February, 1903, passed an order in which it was set out that the Court was of opinion that "the will of Samuel Wickes, the first created an estate, tail general; that James P. Wickes and the prior tenants thereof were seized of the farm or plantation, 'Wickliffe,' mentioned in said devise, as tenants in tail;" that William H. Wickes, eldest son of James, became seized upon the death of his father as tenant in tail of said farm; that Willie Wickes,

as the only child of William H., is tenant in tail thereof "unless the said estate tail has been broken, barred or destroyed by adverse possession, whereby Charlotte A. Wickes and those claiming" under her would be entitled to said farm in fee-simple; and that in the event said estate tail is not broken or barred the only relief that could be extended to the purchaser, Stevens, would be to rescind the sale to him and direct such purchase-money as he had paid "to be refunded by the trustee; but if the entail had been broken then the sale would be "finally ratified as carrying the fee-simple in said farm."

The Court finally ordered that the parties be allowed to take testimony "as to the extent and character of any adversary possession of said farm, to be returned to the Court and used in deciding said question, the Court reserving the right to decide thereon, and also as to what relief, if any, the said Willie Wickes is entitled (if not barred by limitations) in this case." From this order Stevens, the purchaser, ordered an appeal, and the children of Charlotte A. Wickes ordered two appeals— one of which was taken generally and the other as respondents to the petition of Willie Wickes. After the taking and return of testimony as ordered the Court passed the final order in the case finally ratifying the sale, from which order the appeal of Willie Wickes was taken; and the purport of which has already been given.

The facts and proceedings in the record have been set out at length because this was necessary to a proper understanding of the attitude of the case before the Court; and of the questions to be passed upon. Leaving out of view for the present the matters embraced in the order of the 26th of February last and proceeding to a consideration of the order last mentioned ratifying the sale, it seems clear that the exceptions to the sale filed by Willie Wickes were properly overruled. The case at bar is, as respects the nature and character of the exceptions, so nearly analogous to the case of *Slingluff* v. *Stanley, Trustee et al.*, 66 Md. 220, that it is hardly necessary to do more than to make reference to that case as decisive of

this. The exceptions went to the jurisdiction of the Court and the merits of the decree, and presented matters against the ratification of the sale which, as among the parties thereto, were concluded by the decree until that should be set aside by the Court which passed it, or be reversed on appeal. In the case just cited it was said "if it be apparent on the face of the proceedings that there was an entire want of jurisdiction of the Court to decree the sale of the property, then, doubtless, the objection could be availed of in this mode." But the Court in that case found no such condition of proceedings and the reasons given there in support of the jurisdiction all apply with pertinency and force in the case at bar. The Court in the case cited, also says "the test is, whether a demurrer would have been sustained if interposed to the bill; and that it would not, we think is clear." In the present case it is equally clear that a demurrer to the bill would not have been sustained. The bill alleged that Charlotte A. Wickes died intestate and "left a large and valuable farm" (being the property in question); that she left heirs who were named in the bill; and "that the said real estate is not susceptible of partition without loss and injury to the parties entitled to interests therein;" and prayed that a decree be passed for a sale thereof. Here were all the necessary allegations to give the Court jurisdiction to proceed to decree a sale. We think this sufficiently disposes of the exceptions to the ratification of the sale taken apart from other proceedings on the part of appellant in Appeal No. 10 in assertion of her claim of title to the property sold.

This brings us to the inquiry, is this appellant entitled to the relief prayed in her petition of the 6th of September, 1902? Waiving all question of procedure and assuming that the petitioner in said petition became tenant in tail under the devise and through the course of descent, which have been set out, the relief sought by the petition was properly refused by the Court below, if, as that Court determined, the claim of this appellant as such tenant in tail had become barred by limitations and the adverse possession of Charlotte A. Wickes and those claiming under her.

It was decided at an early date in this State under the Statute of the 21 James I, chapter 16, that the failure of the tenant in tail to enter on lands held by adverse possession against him within twenty years from the time the right of entry accrued to him barred the issue in tail. *Martindale* v. *Troop*, 3 Har. & McH. 244. And this seems never to have been questioned since. If then under the facts of this case Willie Wickes is barred by limitations any issue of hers will be barred; and Charlotte A. Wickes or those claiming under her are invested with an indefeasible title and right of possession of the land in controversy, by reason of their adverse holding of the same, which they could not only defend against any attempt of the tenant in tail or of any issue in tail to dispossess them through legal procedure; but which they could enforce and reclaim by action of ejectment against the party holding the paper title who had ousted them. *Armstrong* v. *Risteau*, 5 Md. 256.

Such being the law, if we find Willie Wickes barred of her title to the property in question by limitations there can be no reason for again opening the case to allow her to withdraw her answer to the bill of complaint and to file an amended answer thereto for the purpose of denying and putting in issue the allegations of the bill affecting the title to the property; or for the purpose of procuring an annulment or modification of the decree. She could derive no benefit therefrom ; nor could such action subserve the interests of any issue.

The Statute 21 James I., ch. 16, in force in this State, provides that "no person or persons shall at any time hereafter make any entry into any lands, tenements or hereditaments, but within twenty years next after his or their right or title, which shall hereafter first descend or accrue to the same; and in default thereof, such persons so not entering, and their heirs, shall be utterly excluded and disabled from such entry after to be made." Then follows the proviso "that if any person or persons * * * that hath or shall have such right or title of entry be or shall be, at the time of the said right or title first descended, accrued come or fallen within the age of

twenty-one years   *   *   *   that then such person and per-
sons and his and their heir and heirs, shall or may, nothwith-
standing the said twenty years be expired, bring his action, or
make his entry, as he might have done before this act; so as
such person and persons, or his or their heir and heirs shall
within ten years next after his and their full age   *   *   *
take benefit of and sue forth the same, and at no time after the
said ten years." *Alex. Brit. Stat.*, 446.

In applying this statute the Courts have construed the pro-
viso, making an exception in favor of persons subject to disa-
bilities at the time of the accruing of the rights therein men-
tioned, according to the strict terms of the statute; and have
held that the time to be allowed to persons under disability at
the time of the accruing of the right, as therein provided, is to
be counted from the date of the removal of the disability; or
where several disabilities exist at the time of the accrual of the
right, from the time when all have been removed. Persons
protected in the proviso by the saving in favor of disability to
make entry or to bring an action cannot avail of successive or
cumulative disabilities; that is to say cannot superadd to a
disability existing at the time of the accrual of the right one
which comes into existence after such right has accrued, so
as to secure for each disability the allowance of time men-
tioned in the proviso.    Accordingly where a disability ceases
while the period of twenty years limitation prescribed by the
statute is running the ten years given to the person who was
subject to the disability will run concurrently with the twenty
years and not successively to it.    All of this doctrine was dis-
tinctly laid down by Chancellor Kent in the case of *Dema-
rest* v. *Wynkoop*, 3 John. Ch. Rep. (N. Y.) 129 (see 136), and
was fully adopted by our predecessors in the cases of *Dugan
et al.* v. *Gittings et al.*, 3 Gill. 138 (marg. Brantly), 161, and
the case of *Hertle* v. *Schwartze & McDonald*, 3 Md. 366.

Now in this case the title of the appellant, Willie Wickes, to
the property in controversy accrued to her at the death of
her father on the 15th of May, 1871.    Her grandfather,
James P. Wickes, had dealt with the property as though it

had descended from the previous possessor as a fee-simple inheritance.   At his death his widow and children remained in possession and enjoyment of the property and dealt with it as though it had descended to them as a fee-simple inheritance; and in 1872 instituted the proceedings in the Circuit Court for Kent County, which have been referred to, to have the property sold for the purpose of partition and division among them as being held by them in fee-simple—making the appellant, Willie Wickes, a party thereto, as representing an undivided interest in the property as the fee-simple heir to her father.

Whatever may have been the effect upon the title to the property of the acts of those previously in possession in dealing with it as a fee-simple inheritance there can be no doubt that when it was sold in 1873 to Mrs. Charlotte A. Wickes and she took possession of it under the sale to her and the subsequent deed there was a complete ouster of the title of Willie Wickes, as tenant in tail.   The circumstances under which Mrs. Wickes went into possession of the property could leave no doubt as to the adverse character of that possession. It needs no argument to show that she took and held the possession under color of title, in good faith and with claim of right; and that the possession was actual, visible, notorious, continuous and exclusive up to the time of her death in 1900. The facts which have been set out make that clear of themselves.   At the death of Mrs. Wickes her possession enured to the benefit of her heirs at law, *Campbell et al.* v. *Fletcher,* 37 Md. 430; *Hanson et al.* v. *Johnson,* 62 Md. 25; *Black. Comm.,* 2 book, pg. 196.   And Blackstone lays it down that at common law where a disseisor dies possessed of land which he is holding adversely to the title of the true owner and the same descended to his heir that the person disseised could not divest the apparent right of such heir "by mere entry or other act of his own, but only by an action at law."   But this doctrine seems never to have prevailed in this State; *Alex. Brit. Stat.,* 334; *Dorsey on Ejectment,* 34; *Mockbee's lessee* v. *Clagett,* 2 Har. & McH. 1;   And in 3 *Wash. on Real Property,* sec.

1958, it is said that tolling entry by descent cast "is pretty generally if not universally abrogated in this country."

Then Willie Wickes had the right of entry and the right to bring an action of ejectment for the land at any time within ten years from the time when she became of age and the disability of infancy was removed. In *Angell on Limitations*, sec. 377, it is said "When an action of ejectment is brought within the time limited by the statute for the right of entry upon the land * * * proof of actual entry is dispensed with. But when the action is not brought until after the time limited has expired, it is incumbent on the lessor of the plaintiff to prove an actual entry within such time—that is the entry must be upon the land in question." We may refer to 4 Har. & McH. 128, *Ridgely* v. *Ogle et al.*, and 11 Gill. and John. 283, *Harbaugh* v. *Moore*, in support of the text in Angell. Twenty years from the time that the right of entry upon the land in question first accrued to Willie Wickes had long since expired when she became of age; and this is so whether the ouster of her from the land in question be accounted from the date of the sale to Charlotte A. Wickes in March, 1873; or from November 13th, 1877, the date of the trustee's deed. She came of age May 2nd, 1892, and the ten years allowed her by the saving clause of the statute within which to make entry or bring an action of ejectment expired on the 2nd of May, 1902.

She brought no action of ejectment for the land within the period of limitations prescribed by the statute and the inquiry now to be made is whether there otherwise appears in the facts of the case anything to break the adverse possession within such period. It would seem to be clear from the facts stated that no actual entry was made at any time upon the land in question by Willie Wickes of a character to operate to restore to her the possession thereof. All the authorities agree that an entry to have such effect must be an actual entry upon some part of the land within the period of limitations, and must evince that it is made with the clear and unequivocal intent to invade and challenge the right of the holder of the adverse possession and to retake possession. In the

case of *Burrows* v. *Gallup et al.*, 32 Conn. 493–499, we find
the following striking language used in respect to the char-
acter of entry required: "but when a party is once dispos-
sessed it is not every entry upon the premises without permis-
sion that would disturb adverse possession.    He may tread
upon his own soil and still be as much out of possession of it
there as elsewhere.    He must assert his claim to the land,
perform some act that would reinstate him in possession be-
fore he can regain what he has lost.    It is evident therefore
that an entry by stealth under circumstances that go to show
that the party claimed no right to enter; or an entry for other
purposes than those connected with a right to enter, would
not be sufficient to break the continuity of exclusive posses-
sion in another."    This case is the more significant because it
was in evidence that the land there in question, and to which
the prescriptive right was set up, had been part of a public
wharf or landing place and the language quoted related to the
theory of adverse possession against the public, members of
which had, during the running of limitations, resorted to the
premises for purposes incident to their use by the party who
set up the prescriptive title.    To the same effect is the case of
*O'Hara* v. *Richardson et al.*, 46 Penna. 385–390.    The same
doctrine is laid down in the text-books as the result of all the
authorities, 3 *Wash. on Real Prop.* (6th ed.) sec. 1958; *Angell
on Lim.*, sec. 378; *Tiedeman on Real Prop.*, sec. 703.

It has been seen from the facts which have been recited that
the appellant, Willie Wickes, not only made no such entry
upon the land in question as would gratify the law, as laid
down in the authorities referred to, to break the adverse pos-
session ; but that as far as she acted at all in reference to this
possession her every act, prior to May 2nd, 1902, was in re-
cognition of the title asserted by those holding adversely to
her own.    But it is argued that after the death of Charlotte
A. Wickes the possession of the land in question by her heirs
was no longer exclusive of the title of Willie, as tenant in tail
or of her possession under that title ; because she being one of
the heirs, was constructively in possession with her co-heirs ;

that so far as her co-heirs or any of them were in actual pos-
session of the premises their possession was her possession;
and that so far as they were in possession through the tenants
who occupied the premises between the death of Mrs. Wickes
and the 2nd of May, 1902, she had with them a common or
joint possession.   It is further argued from this that she being
rightfully tenant in tail of the property so held by joint pos-
session of herself and her co-heirs had a superior title which
drew to her the whole possession according to her title.   This
is not supported in reason.   We cannot liken this to a case of
mixed possession where two parties are in possession of the
same land, one having title and the other no title; or as was
said in *Hall* v. *Gittings*, 2 H. & J. 115, "where two persons
are in possession, the one by right and the other by wrong."
In such cases the law imputes the possession to the one who
has the title and for reasons that are sound and just.   In the
instances given there is a concurrence of possession but not a
concurrent or joint seisin.

The positions of the parties in the case at bar with reference
to seisin and possession are altogether different from those in
the instances supposed.   By disseisin the disseisor acquires
an inchoate title in and to the property of which he becomes
thus possessed which is so far recognized in the law that he
can transmit it to those in privity with him.   Washburn in his
work on Real Property says, quoting from Preston, "It (dis-
seisin) is the commencement of a new title producing that
change by which the estate is taken from the rightful owner
and placed in the wrongdoer.   Immediately after a disseisin
the person by whom the disseisin is committed has the seisin
or estate and the person on whom the injury is committed
has merely the right or title of re-entry."   3 *Wash. on Real
Prop.* (6th ed.) sec. 1955; see also *Tiedeman on Real Prop.*,
sec. 701.   We have already seen what was requisite to make
the exercise of this right of re-entry effective.

Now as has already been indicated when Charlotte A. Wickes
purchased and went into possession of the property here in
question there was a complete ouster of the title and posses-

sion of the appellant, Willie Wickes. Mrs. Wickes had the seisin and at her death the estate and seisin descended to her heirs. That is to say the new title acquired by her and the seisin thereunder descended. Her heirs each took an undivided interest in the estate so descended ; and could only take according to her title for, as her heirs, they could take nothing otherwise. Willie Wickes as one of her heirs thus became seized of one of the undivided interests in the estate that descended to the heirs. She had never made any entry on the premises with a view or in a way to challenge the title that thus descended to her ; and was never in occupancy or possession in fact of the premises or any part of them as cotenant or otherwise. The only possession, that she could be said to have had or ever had, at least since the disseisin, was the constructive possession that attended upon her title as heir to Charlotte A. Wickes. Here is the difference between this case and one of mixed possession, where there is no concurrence of seisin and where one of the concurrent possessions is hostile to the seisin ; for as between Willie Wickes and her co-heirs there was a concurrence of seisin but not of actual possession ; and so far as there was a concurrence of possession, constructively considered, it was under a common seisin. It is hard to perceive, in the light of reason, or as a logical deduction from any rule of law, how one, of several co-tenants, can, by virtue of the common seisin and mere constructive possession under one title, claim to be in possession of the common property by a different and a paramount title which destroys the one upon which the seisin and possession depend. Especially, if, as in this case such paramount title was never before asserted and was in abeyance until asserted. It would seem to be clear that the seisin in the appellant, Willie Wickes, as one of the heirs of Charlotte A. Wickes, being of an undivided interest in the estate descended to her and her co-heirs, could draw to itself the possession of no greater interest and no greater or different estate. There is to be found therefore in the circumstances, and the situation of the parties in interest in this controversy, incident to the death

of Mrs. Charlotte A. Wickes before the completion, by adverse possession, of her title to the property in question, nothing to interrupt the running of the Statute of Limitations against the claim of the appellant, Willie Wickes, or to break the adverse possession set up against her title.

It is further argued on behalf of the appellant that the proceeding upon her petition which we are now considering is to be treated as a proceeding to obtain relief from the decree in this case on the ground of mistake to which the plea of the Statute of Limitations is interposed; and to have applied to it what is affirmed to be the settled law in a Court of equity that the Statute of Limitations begins to run against an action for relief on the ground of mistake from the time of the discovery of the mistake, The present would seem to be a very different proceeding from an action based on the substantive jurisdiction of equity to decree relief on the ground of mistake ; but it is enough to say in reference to the contention in this regard that the bar of the statute which was set up in this proceeding does not apply to the relief which the petition asks. The petition is a summary mode of seeking relief from the effect of the decree in this case. Supposing the relief to be granted and the decree set aside the appellant (petitioner) would simply be in the position she would have been in if the decree had never been passed. The question then would be as to the effect of limitations in the further pursuit of her asserted rights. To that effect it was set up; and in considering the petition the questions of limitations and adverse possession have not been treated as affecting the subject-matter of relief involved in the petition except as reasons and matter of argument, suggested by the facts of the case, why the granting of the relief asked for, would be useless and nugatory. The questions related to legal rights and legal demands—to whether the petitioner had, as respects the land in controversy at the time of the filing the petition, a right of entry; or could maintain an action of ejectment to recover possession thereof. If these legal rights did not exist at that time and her title as tenant in tail was barred and taken away the petitioner had

no interest to be subserved by disturbing the decree and therefore no right to have it set aside to the prejudice of others.

The inquiry was, therefore, not as to the relief the petitioner (appellant), was entitled to in equity, but as to what relief she could obtain at law where the remedy for her asserted rights had to be pursued. Supposing the petitioner in a Court of law what would be the effect of the showing made by her as to a mistake of her rights to avoid the bar of the Statute of Limitations. The petitioner (appellant), does not charge fraud in fact against any one, a party to the proceedings nor against any one at all, and the facts and testimony show no fraud practiced upon her by anybody; nor any fraudulent concealment from her of her rights. Her mistake of her rights is shown to be the result of an ignorance, common to all the parties having any concern with the property in controversy, of the true state and condition of the title thereof; and this ignorance was attributable to the neglect of and inattention of all of these parties alike to means and sources of information equally open and accessible to all. Then the mistake of the appellant as to her now asserted rights was mere ignorance of such rights of which she could not avail in a Court of law as against a plea of the Statute of Limitations. *Abell* v. *Harris*, 11 Gill. & John. 367.

The conclusion then is that on the 2nd of May, 1902, the bar of the Statute of Limitations became complete as against the title of the appellant, Willie Wickes, to the land in controversy and the title of the heirs and privies of Charlotte A. Wickes thereto was perfected by her and their adverse holding of the same. The result is that in Appeal No. 10 the order of the Court below will be affirmed. The result as to the Appeal No. 10 makes it altogether unnecessary to discuss the questions intended to be presented by the appeals from the order of the 26th of February, 1903. The questions passed upon by the Court in this last mentioned order were all decided in favor of the appellant in Appeal No. 10. The purchaser, Stevens, did not appeal from the order of the 7th of July, 1903, reviewed in No. 10 of these appeals, but

through his counsel expressed himself as "wholly satisfied" with that order. The other parties to the cause as respects the order of July 7th, 1903, are in the same interest as the purchaser.

The Appeals Nos. 7, 8 and 9 from the order of the 26th of February, 1903, were improvidently taken. That order was in no sense a final order. The Court expressly reserved final action. It was not an order embraced within the terms of sec. 25 of Art. 5 of the Code. It cannot be said to be an order at all of any determinate character. It is more an expression of opinion by the Court upon questions all of which as far as it was necessary to review them would have been presented here by the final appeal in the case. We do not decide the question, because it has not been presented, but we do not wish to be understood as giving approval to the theory upon which the parties below proceeded that the questions passed upon by the Court in the order of February 26th, 1903, are within the purview of sec. 183 of Art. 16 of the Code. The Appeals Nos. 7, 8 and 9 will be dismissed.

> *Order in No. 10 affirmed. Appeals in Nos. 7, 8 and 9 dismissed. Costs to be paid from the funds in the hands of the trustee.*