CASE 93—PETITION ORDINARY—FEBRUARY 13.

# Maysville & Big Sandy R. R. Co. v. Holton, &c.

APPEAL FROM LEWIS CIRCUIT COURT.

1. EASEMENT—ADVERSE POSSESSION—RAILROADS—RE-ENTRY.—Where the owner of a tract of land granted to a railroad company the right of way over it, and the right of way was staked off by the company, but, subsequently, the construction of the road was temporarily abandoned and that owner then conveyed the tract to another, the right of the company to the right of way granted was barred by fifteen years' adverse possession of the purchaser—his possession having included the right of way— although the company had, within the fifteen years, caused its engineer to enter upon the land and re-stake the right of way. .Such a re-entry, in order to break the continuity of the adverse holding, must be accompanied by distinct acts of ownership and some explicit declaration or act of notorious dominion, which challenges the right of the occupant, and must bear upon its face the unequivocal intention to resume the possession.

WADSWORTH & COCHRAN FOR APPELLANT.

1. The evidence of Holton himself shows there was no adverse holding. He admits that he expressed himself to the chief engineer as favorable to the road and as desiring its construction; and that in farming his land in 1886, he left the space for the right of way, and permitted the contractors and their workmen to enter and begin the construction.
2. There is no evidence of adverse user prior to 1863 or '64, and the continuity of any adverse user since then was broken in 1871 and '72, when the right of way was surveyed, designated and marked off by stakes; in 1877, when appellant's engineer noti-

fied appellee that he again took possession, and no objection was made; and in 1882, when the right of way was again surveyed, staked and marked off.

3. It is indispensable, in order to acquire title by adverse possession, that the possession .should be continued uninterruptedly for the whole statutory period. (Law v. Smith, 4 Ind., 56; Winslow v. Winslow, 52 Ind., 8; Andrews v. Mulford, 1 Hayw. (N. C.), 320; Holdfast v. Shepherd, 6 Ired., 361; Williams v. Wallace, 78 N. C., 354; Wickliffe v. Ensor, 9 B. M., 253; Denham v. Holeman 26 Ga., 182; Doe v. Eslana, 11 Ala., 1028; Haynes v. Boardman, 119 Mass., 414; Cobb v. Smith, 88 Wis., 21; San Francisco v. Fulde, 37 Cal., 349; Trustees v. Kirk, 68 N. Y., 459; Tyler on Ejectment, 909, *et. seq.*)

The continuity of possession may be broken in various ways, and has been broken in this case (1), by Holton's acquiescence when he was notified by the engineer in 1877 that he took possession of the right of way; and (2), when the respective entries were made in 1871 or '72, and in 1882, and the right of way surveyed and staked off. That an entry for the purpose of marking the boundary and surveying the lines is sufficient to break the continuity of possession. (See Hood v. Hood, 2 Grant's Case, 229; Peabody v. Hewett, 83 Amer. Dec., 497, and notes; Trotter v. Cassidy, 13 Amer. Dec., 185.)

4. But if there had been no interruption of the possession, there was no such user of the right of way as to constitute adverse possession. The substance of the evidence is that appellees and those under whom they claim, merely claimed to the extent of their boundaries, and the evidence fails to show any use to which the right of way was put by them, except one year. This is not sufficient adverse user to bar the right. (E., T. V. & G. R. Co. v. Telford's Ex'or, 89 Tenn., 293, and 14 S. W. Rep., 776, and authorities there cited.) ·

5. No length of non-user will defeat the right when once acquired. There must be an adverse use by the servient estate for the statutory period. (Curran v. City of Louisville, 83 Ky., 628; Washburne on Easements, p. 640; Rowan v. Portland, 8 B. M., 250; Chandler v. Jamaica Pond Aqueduct, 125 Mass., 545.)

W. C. HALBERT FOR APPELLEES.

1. The walk over the right of way by appellant's engineer, and causing a few stakes to be driven, was not sufficient to break the continuity of the adverse holding. Such an entry, in order to break the adverse holding, must have all the qualities required in that of an adversary—must be distinct and notorious,

Maysville & Big Sandy R. R. Co. v. Holton.

and of such a character as to be notice to the possessor that he takes possession. (Robertson v. Robertson, 2 B. M., 238; Dembitz on Land Titles, vol. 2, p. 1391.)

2. The instructions as to adverse possession, and as to what was necessary to break its continuity, were correct. (Thompson v. Thompson, 14 Ky. L. R., 516; 14 Ky., L. R., 87; Hoffendorfer v. Gault, 8 Ky., L. R., 7; Angell on Limitations, sec. 386, and authorities there cited; Amer. & Eng. Enc. of Law, vol. 1, pp. 225, 228.)

3. It is well settled that a railroad company may survey and stake the line of its road without being liable to even an action of trespass, and, as a natural sequence, such acts confer no title or possession upon the company, and do not, as a matter of law or fact, constitute notice to the land owner that the company is claiming a right of way over his farm. (Lewis on Em. Domain, sec. 145; Wood on Railroads, vol. 2, sec. 243, minor ed.) Of such acts being sufficient to pass title, or affect innocent purchasers with notice, the New York court says: "A contract with owner of land to build the road through his land and staking out the track through the land is not such occupation as will be notice of the right of the company against a subsequent mortgagee." (Merritt v. Northern Railroad Company, 12 Barb., 665.) If such acts are insufficient to be notice to a mortgagee, they are of course insufficient to affect a good faith purchaser, who has paid all the purchase price, and whose standing in the law is as high or higher than a mortgagee, who loans his money on the property as security merely.

4. An easement in land is an interest in the land which fifteen years' adverse user by enclosure will bar. (Kentucky Statutes, secs. 458 and 2505; Dudley v. Trustees, 12 B. M., 610; Alves v. Henderson, 16 B. M., 131; Elliott on Roads, 666; 13 Ky. L. R., 401; L. & N. R. C. v. Quinn, 15 Ky. L. R., 83; Cornwall v. L. & N. R. Co., 9 Ky. L. R., 934; I. C. R. Co. v. Houghton, 126 Ill., 233; Orr v. O'Brien, 77 Iowa, 253; Herman v. Roberts, 119 N. Y., 37.)

5. The deed under which appellant claims the right of way, does not describe the land over which it was given at all, and there was certainly no such description as would have enabled appellees to identify the land, and there was, therefore, nothing to give them notice of appellant's claim. (Voorhies, &c., v. Eiting, 15 Ky. L. R., 161; Jones v. Tye, 14 Ky. L. R., 448; 2 Amer. St. Rep., 649; 37 Amer. St. Rep., 156; Parsons on Contracts, vol. 3, p. 14; 51 Amer. Rep., 475.)

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

In October, 1889, the appellees, Holton and wife, filed in the Lewis Circuit Court their petition in which they sought to recover damages from appellant for an alleged wrongful entry upon appellee's land by appellant's construction and operation thereon of its railroad, said land being owned by the wife; and they further sought to recover for permanent and continued trespass by the appropriation of the land taken by appellant and for incidental damages to the residue of the tract, said damages being alleged in the sum of $1,500.

Appellant admitted the entry complained of and the construction and operation of the railroad, and pleaded justification of same by alleging that prior to the acquisition of the land in question by appellees the railroad or its vendors had acquired a written grant of the right of way over same, upon which to locate and build its railroad, from the then owner of the land and from whom appellees subsequently acquired the title, claiming such right and title under a deed from one William McLean, dated May 3, 1853.

Appellees by replies traversed all the affirmative allegations of appellant's answer and plead and relied upon actual, continuous, adverse possession, under color of title, of all the land sued for, for more than fifteen years prior to the commission of the acts complained of in 1887, for which the suit was brought, it being alleged in reply that appellant's grant of the right of way was obtained in 1852; that in 1854 appellant became insolvent and ceased the construction of its

road until the summer of 1856. They claim that in 1858 John S. Nixon purchased the land in question at a commissioner's sale on July 15, 1858, obtained a deed, therefor and took possession of said land under said deed; that he held possession of same, including the right of way, claiming adversely to appellant, until the year 1864; that in that year Nixon sold and conveyed said land by general warranty deed, to John and Thomas Willim and that said Willims took possession of and held it, claiming it adversely, until April, 1874; that at that time said Willims sold and conveyed said land to the appellee, Martha Holton, and thereupon she and her husband entered upon and took possession of same and held same until the wrongful entry complained of, which was made in the year 1887, claiming that the appellees and those under whom they held had been and were in the exclusive, adverse and uninterrupted possession of said land including the right of way.

The appellant, by a rejoinder, denied the allegation of continued adverse possession on the part of those under whom appellees claimed, and allege affirmatively that in 1871 its vendee, the Kentucky & Great Eastern Railway Company, re-entered upon the right of way and held same until 1873; that in 1877 appellant took possession of said right of way, the contract of sale being rescinded, and that in 1886 it re-entered and built and constructed the road, and denying, in substance, that appellees had been for fifteen years in the continuous adverse possession of the said right of

way at any time between 1858 and 1887. All these affirmative allegations were denied by appellees in their rebuttal.

This case was tried before a jury, and resulted in a verdict of $700 for appellees, upon which judgment was entered, and from that judgment this appeal is prosecuted. The appellant asks a reversal of that judgment, first, because the court erred in allowing immaterial and illegal evidence to go to the jury, to which the defendant excepted; second, that the court erred to the prejudice of the defendant in refusing to permit certain legal and material testimony to go to the jury which was offered by appellant; third, that the court erred to the prejudice of the defendant in giving to the jury, upon motion of plaintiff, instructions 1, 2 and 3, to which defendant objected and excepted; fourth, that the court erred to the prejudice of the defendant in refusing to give to the jury, on motion of defendant, instructions A and B, to which defendant excepted; fifth, that the verdict is not sustained by the evidence and is against the weight of same.

We do not think that there was any material error to the prejudice of the defendant in the admission of illegal testimony or in the refusal of the court to allow proper testimony in behalf of the appellant to go to the jury. The evidence in the case is comparatively simple and short.

In July, 1858, Wallace, master commissioner of the Kenton Circuit Court, conveyed the tract of land now owned by appellees to one John S. Nixon, including

the land claimed as a right of way by appellant. In February, 1864, Nixon and wife sold and conveyed said land, by general warranty deed, to John P. and Thomas H. Willim. In April, 1874, the Willims conveyed said land, by general warranty deed, to Martha Holton, the appellee herein. The evidence shows that the appellees herein and each of their vendors above recited held the possession of the land under the deeds and that the land was inclosed by fences when Nixon sold it to Willims and gave them possession. They were certainly in actual possession of the whole farm. Upon this question of adverse possession John P. Willim says: "We took possession of the place when we bought it to the full extent of the boundary named in the deed; we had tenants on it all the time we owned it; we kept it fenced all the time we owned it; we knew nothing of the claim of the railroad for right of way while we owned this farm, and we notified the railroad people in 1873 or 1874 not to enter it." Mrs. John Soister testifies that she and her husband, John Soister, resided on the farm as tenants of Willim in 1873 and 1874, and that no work was done on the farm by the railroad during that time. Her husband notified the railroad not to pass through the place, and they left without doing any work. The appellee, W. J. Holton, testifies that he took actual possession of this farm in 1875; that he had no notice of any right of way for a railroad track over it. He testifies that the whole of the land had been inclosed by fence ever since he owned it.

On this question of adverse use, the appellant intro-
duced only one witness, Col. Childs, its chief engineer,
who testified that he was the chief engineer of the de-
fendant company from the time it began the construc-
tion of its road in 1852 down to its completion in 1888.
He says that preliminary surveys were made in 1852
and it was located and put under contract and that a
good deal of work was done west and east of plaintiff's
farm, but none on it; that work was suspended in 1854.
He also claims that he had procured a grant of the
right of way from William McClain, which was as fol-
lows: "Know all men by these presents: That I, for
the purpose of securing the location of the Maysville &
Big Sandy Railroad on the route through my land, do
hereby bargain, sell, release and convey unto the said
Maysville & Big Sandy Railroad Company all my right,
title and interest, legal or equitable, in and to so
much of my land on which said railroad shall be lo-
cated or be necessary for the location, construction and
maintenance and proper use of said road, granting a
full, free and uninterrupted right of way for said rail-
road through my said land so long as it shall continue
to be used as a railroad, and releasing and relinquish-
ing all claim for damages in consequence of the loca-
tion upon and use by said company of said land for the
purposes of said road, to be held and enjoyed by the
said company for the purposes of their road as long as
it shall continue to be used as a railroad, but no longer,
the title and possession to revert to me upon the discon-
tinuance of said railroad. Witness my hand this 3d

day of May, 1853 (Signed), William McClain." Wit-
ness testified that at the time he obtained the aforesaid
release from McClain the road had been•located and
stakes marking the location were standing on the land;
that after the abandonment in 1854 the work of con-
structing said road was not commenced again until
1871 or 1872, but that the organization was kept up,
the witness being a director during that time, but that
the road had been sold under proceedings to enforce
the mortgage and had been purchased by Harrison
Taylor and others, who had reorganized it; that in
1871 to 1873 the company, as reorganized, sold its rights
to the Kentucky & Great Eastern Railway Company,
who began the construction anew, and that in 1871 and
1872 the lines of the road were retraced through the
plaintiff's land and stakes were driven in the ground,
but that no work was done on the land, although some
work was done east of it as far as Concord and west
of it between it and Maysville. He also testified that
some work was done to within fifty feet of plaintiff's
line; that in 1877 the defendant company took posses-
sion of the land again and sent him over the line to see
the land-holders and take possession of the right of
way, which he did by walking on foot. He claimed
that he saw the plaintiff, W. J. Holton, at his place
along the right of way and notified him of
his purpose and that he took possession of his
right of way on behalf of the company. He
also proved that the land claimed by plaintiff was the
same as that which was conveyed to the road under

the McClain deed.   Witness on cross-examination tes-
tified that he got away from Kentucky in January, 1855,
and did not return to stay until 1869; that the grad-
ing through plaintiff's place was done in August and
September, 1886; that he saw Holton in Maysville in
1886 and that he claimed pay for the right of way
through his land.

His testimony shows that no work was ever done by
the appellant upon appellee's land under the convey-
ance from McClain at any time before 1886, except to
survey the line and drive down some stakes, and that
this would take from half an hour to an hour on
plaintiff's farm each time it was surveyed.

The deed from William McClain, dated 1853, under
which appellant claimed title to the right of way, is
singularly indefinite.   It does not identify the property
or define the location of the right of way or the extent
of same with any certainty; it does not even locate
the land.   It would not have been possible, without
the parol evidence of Childs to have identified the land
of the appellee, Martha Holton, as the same land over
which McClain undertook to give the right of way by
his deed of 1853, and during the long period of time
between May, 1853, and 1886, there is no evidence that
the appellant was ever on this land exceeding three
times, and then remained only long enough to sur-
vey the land and drive stakes every hundred feet.
The acts and possession of appellant, so far as assert-
ing ownership to the right of way is concerned, do not
seem to us to have been sufficient to have given notice

to persons who had purchased the property in good faith of the rights which appellant claims had been granted to it.   It does not seem to us from the evidence in this case that appellant ever took or had possession of this right of way at any time after 1854.   The mere walking along the right of way by the witness Childs and re-staking said right of way was not sufficient to have established a re-entry as against the continued and actual and adverse possession held by appellees and those under whom they claim, or to have broken the continuity of their adverse holding.

"The authorities hold that such entry must be evidenced by distinct acts of ownership, and that there must be explicit declaration or an act of notorious dominion by which the claimant challenges the right of the occupant," or, as was said by Judge Gibson in the Pennsylvania case, "The entry must bear on the face of it the unequivocal intent to resume the possession."   It has been held that it is not every entry upon the premises without permission that will disturb the adverse possession.   "A man may tread upon his own soil, and still be as much out of possession of it there as elsewhere."   He must assert his claim notoriously and openly or perform some act that will reinstate him in possession before he can regain what he has lost.

It does not seem to us that the possession of the appellee of this property or that of her vendors was ever seriously challenged or disputed by appellant. Col. Childs, the engineer of the railroad company, did

nothing on this land, so far as ownership is concerned, which he could not have done on any land. The mere entry for the purpose of survey or to drive down stakes is not sufficient to divest the occupant of title, who holds the possession and claims the property, or to give notice to the occupying claimant that the company was asserting the right of way over his farm. (See Lewis on Eminent Domain, 145; Wood on Railroads, vol. 2, page 243.) "A contract with the owner to build a road through his land and staking out the tract is not such occupation as will be notice of the right of the company against the subsequent mortgagee." The acts of Childs were not sufficient to apprise appellees or their vendors of the claim of the railroad or to divest them of their adverse possession. The testimony shows conclusively that neither Holton nor Willim during a period of more than twenty years knew of this claim of the railroad company to a right of way over the land, or of any act that indicated that their rights to same were disputed or their possession or right of possession was invalid.

The appellant raises the point that even if there had been no interruption of the possession of appellee and his vendors as shown, the evidence as to the user was not enough to bar appellant's grant of the right of way, claiming that the substance of the evidence as to diverse user on the part of appellee and his vendors was that the right of way was within the boundary of their deeds and inside their fences, that there was no evidence of the right of way ever having been put to

any use except in 1873 or 1874, Willim's tenant had a
crop of corn on it, but they contend that this would not
be sufficient diverse use to bar the right, and cite
an opinion in the case of the E. T. V. & G. R. R. v. Til-
ford (89 Tenn., 293).

It seems to us that the evidence shows that the ap-
pellee and his vendor, Willim, made the same use of
the right claimed by appellant that they did of every
other part of their farm inclosed within their bound-
ary.  There is no evidence of any kind to show that
they ever at any time made any difference between
the land claimed by appellant and the balance of the
tract.

In the case cited by appellant the road had actually
been constructed and was being daily operated, and
there was no pretense that the right of the claimant of
the property by diverse use had acquired same inno-
cently or by purchase.  That case is so distinguished
from this by the facts as to bear but slight, if any, an-
alogy, and is in conflict with the rule in this court
which has repeatedly recognized the doctrine that the
right to the dominant estate, the easement, may be
extinguished by permitting the owner of the servient
estate to take actual adverse possession of it and to use
it as his own for a period of fifteen years.  (See the
case of L. & N. R. R. Co. v. Quinn, 94 Ky., 310, and the
authorities there cited.)   Mere non-use will not be an
abandonment of the easement if created by express
grant, but if accompanied by actual adverse possession
by the owners of the servient estate for the statutory

period of limitation, the dominant interest will be extinguished.

The instructions given by the court and those refused are copied and annexed ,hereto, and, we think, fully and properly give to the jury the law of the case; in fact, instructions five and six are very favorable to appellant, and perceiving no substantial error to the prejudice of the rights of appellant, the judgment is affirmed.

Instructions 1, 2 and 3 offered by appellees, and given by court:

"No. 1. The court instructs the jury that, although they may believe from the evidence that the defendant, in May, 1853, acquired from Wm. McClain, then the owner of the lands now claimed by the plaintiffs, a release or grant of a right of way or easement over said lands upon which to locate and construct its railroad, yet, if the jury believe from the evidence that the plaintiffs and those through whom they claim and derive title to said lands, have had the actual, continuous, uninterrupted possession of all the lands sued for in the petition, claiming the same adversely to the defendant and all others for fifteen years or more next before the entries and trespasses by defendant thereon sued for in the petition, then all right of title acquired by the defendant under the release or conveyance from McClain is tolled and taken away, and the defendant, and all claiming under it, are barred of any right or easement in the lands described in the petition, and the full right and title thereto vested in the

plaintiffs; and if the jury shall believe from the evidence that defendant's right and grant from McClain was thus tolled and barred by adverse holding in the manner aforesaid, then they will find for the plaintiffs such damages as they have sustained by the defendant's entry, construction and maintenance of its railroad upon their lands, not exceeding in all the sum of $1,500, and the jury being confined in their assessment of such damages to the rule laid down in instruction No. 3 and governed by all the evidence as to such damages, if any sustained.

"No. 2. The court instructs the jury that if they believe from the evidence that John S. Nixon conveyed the entire boundary of land described in plaintiff's petition to John P. and Thomas H. Willim on the 18th of February, 1864, and that said John P. and Thomas H. Willim, on the 22d of April, 1874, sold and conveyed the same property to the female plaintiff, Martha Holton, and further believe from the testimony that in pursuance of such conveyances, and under color thereof, they, the said John P. and Thomas H. Willim, and the plaintiffs, W. J. and Martha Holton, entered into the actual possession of the lands so conveyed, claiming title thereto to the full extent of the boundary and title so conveyed, and that such possession of said land continued for a period of fifteen years previous to the defendant's entry sued for, and during such period their possession was actual, visible and notorious, then such possession is adverse and the jury should find for the plaintiffs and determine their damages as indicated in instruction No. 3.

"No. 3.   The court further instructs the jury that if they find for plaintiffs as indicated in instruction No. 1 or 2, then they must find for plaintiffs the value of the land taken by the defendant for its road, and in valuing the same they must take into consideration its relative position to the entire farm of which it is a part, and its value when considered in its relation to the entire tract, which includes the actual injury to the remainder of the farm and its improvements, and every direct damage tending to diminish in value the plaintiff's farm by reason of the use and appropriation of the strip actually taken and used by defendant in constructing and operating its road permanently thereon, not exceeding in all the sum sued for, fifteen hundred dollars, and being governed in such assessment of damages by all the evidence in the case."

Instructions 4, 5 and 6, offered by appellant and given to the jury:

"No. 4.   The jury are instructed by the grant from William McClain to the defendant, the Maysville & Big Sandy Railroad Company, said defendant acquired the right of way over the land owned by plaintiffs, and it was entitled to enter in and upon said land under said grant in 1886, and construct its railroad, unless said grant had been barred by adverse use and possession continued uninterruptedly for a period of fifteen years prior to the time in 1886 when it entered.

"No. 5.   The jury are instructed that unless they believe from all the evidence that the plaintiffs and those under whom they claimed continuously and uninter-

ruptedly for a period of fifteen years after 1858, and before 1886, obstructed the right of defendant or those claiming or acting under them to enter upon said land for the purpose of its railroad by such open and notorious acts as were inconsistent with the rights of way granted to said company, and so open and notorious that the defendant must reasonably be considered as having had notice of them, and from them to have known that the plaintiff denied its right of way, and their occupation of the right of way was hostile to the right of the company to enter thereon, they will find that the grant in question is not barred by adverse use and possession.

"No. 6.    The jury are instructed that the mere fact that the right of way in question was within the enclosure of the fences of plaintiffs, and those under whom they claim the same, after the making of the grant or before, or the use of said right of way for any purpose consistent with the right of way granted, are not evidence of hostile possession by the plaintiffs of the said right of way."

Instructions 4 and 5, offered by appellees and refused by court:

"No. 4.    The court further instructs the jury that the writing dated May 3, 1853, purporting to be a release from William McClain to the defendant to a right of way over his land, under which the defendant claims the right of way over plaintiff's farm, is insufficient in law to pass or convey such easement or title therein to the defendant, unless the jury believe from the evi-

dence that in pursuance thereof the defendant located its road thereon and took the actual possession of the right of way so granted; and unless the jury so believe they will find for the plaintiffs, and determine their damages as indicated in instruction No. 3.

"No. 5.   The court further instructs the jury that if they believe from the evidence that the plaintiffs and their vendors, John P. and Thomas H. Willim, purchased and paid for the property described in the petition without actual notice of the release made by Wm. McClain to the defendant on May 3, 1853, and further believe from the evidence that at the time they took and acquired their title to the property the defendant was not in the possession of the right of way granted, and had, at the time they so acquired title, done nothing under the release excepting to survey the route or location of its road thereon, then the law is for plaintiffs, and the jury will so find and assess their damages as indicated in instruction No. 3."

Instructions A and C offered by appellant and refused:

."A.   The jury are instructed that if they believe from the evidence that in 1872 the defendant company or the Kentucky & Great Eastern Railroad Company, by its agents or employes, entered upon said right of way as same had been previously surveyed and located by it, and staked same off, and did so under a claim of right to the right of way, and to take possession of same, then said grant has not been barred by adverse possession, and the jury will find for defendant.

"C.   The jury are instructed that if they believe from all the evidence that the defendant, by its agents and employes, in 1886, entered upon plaintiffs' land by their permission or consent, they will find for the defendant."