IVOR E. B. ROSENCRANTZ ET UX. *v.* SHIELDS, INC.

[No. 1004, September Term, 1974.]

*Decided October 31, 1975.*

The cause was argued before ORTH, C. J., and POWERS and MOORE, JJ.

*Herbert D. Morrison*, with whom was *Ted R. Hudson* on the brief, for appellants.

*M. Albert Morningstar*, with whom were *David E. Aldridge* and *Zimmerman, Aldridge & Dwyer* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

In this case, brought to establish title to land by adverse possession, we are asked to determine the effect of prior litigation brought by the same plaintiffs, as adverse claimants in possession, against the same defendant, as holder of record title.

Appellants here, plaintiffs below, are Ivor E. B. Rosencrantz and Shirley E. Rosencrantz, his wife. By deed dated 13 May 1964, they acquired title in fee as tenants by the entireties to two contiguous parcels of land in Frederick County, which together comprise approximately 0.952 acres. Appellants' grantor, Jesse N. Smith, purchased the com-

bined tract at a mortgage foreclosure sale, and took title by deed dated 13 February 1953.

The appellee, Shields, Inc., defendant below, is the owner of record of the land adjacent on the north and west to that of appellants. Included in the Shields property is an area of about 0.361 acres which abuts the Rosencrantz land on the west. It is to this area that the opposing parties lay claim — the appellants by prescriptive title, and the appellee by record title.

On 20 May 1974, appellants filed in the Circuit Court for Frederick County a bill of complaint against Shields, Inc., to quiet title, establish boundary lines, and for further relief. It is apparent that the appellants timed the filing of their complaint so as to avoid the problem which had caused their failure in the prior litigation. In their complaint appellants described the land owned by them, and the land owned by Shields, including the parcel of 0.361 acres in dispute, alleged that possession of the disputed parcel by them and their predecessors in title "has been actual, open, continuous, notorious and hostile to the claims of others and under a claim of right" for more than 20 years. They claimed legal ownership by adverse possession.

In its answer, Shields denied appellants' allegations of ownership by adverse possession and further asserted that the subject matter of the complaint was res judicata by reason of the decision of the court in Law No. 7201.

An order signed by Judge Robert E. Clapp on 29 August 1974 referred to a pre-trial conference with counsel for the parties, and directed that the case be heard on 18 September on the issue of res judicata. We assume that the hearing was upon argument of counsel, and that no evidence was taken, because no transcript appears in the record. There followed, however, an 11 page memorandum on behalf of Shields, a 20 page memorandum for Mr. and Mrs. Rosencrantz, and a four page reply memorandum.

On 22 November 1974 Judge Clapp filed an opinion, in which he said:

"This matter was the subject of a prior action at

law brought by them [Mr. and Mrs. Rosencrantz] against the defendant [Shields, Inc.] on October 1, 1971, making a similar claim of title by adverse possession and alleging that the defendant broke and entered their property and was thus a trespasser. Judgment in this case went against the plaintiffs and the decision of this Court was on November 1, 1974 affirmed by the Court of Special Appeals.

\* \* \*

"The preceding law action was one of trespass to try title in which the plaintiff predicated his right of action upon a claim that the defendant illegally broke and entered his property. Thus, the plaintiffs have admitted an entry by the defendant and this entry, if the defendant is the true owner, was sufficient to interrupt the adverse claim of the plaintiffs and to end the previous adversary possession. Defendant's title has now been established in the previous litigation, its entry was thus legal, and this terminated the continuity of plaintiffs' previous possession. See M.L.E., *Adverse Possession*, Sec. 54. The entire premise upon which the previous suit at law was tried, was the physical interruption and interference with the plaintiffs' possession.

"The nature of trespass to try title is set forth in Poe, Pleading (4th Ed.), para. 245, where it is stated at pages 224 and 225,

'Sixth. Where the plaintiff claiming to have the paper title to the land, and by virtue thereof, claiming to be in possession, *or claiming title by adversary possession*, seeks to recover for a trespass alleged to have been committed by the defendant, who himself also claims title and possession under color and claim thereof, and who justifies his alleged trespass accordingly. Here the controversy will

be determined in favor of the party who is found to have the title; the possession in such case being dependent upon it' (Emphasis supplied).

"Under this rule it appears that the entry of the defendant upon the property was sufficient to break the continuity of plaintiffs' possession and is thus conclusive of the plaintiffs' claim in this case."

A decree dismissing the bill of complaint was signed and filed on 5 December 1974. It is from that decree that this appeal was taken.

The record in the prior action at law in trespass to try title was not, in any formal way, made a part of the record in the equity case now before us. It is obvious, however, that by mutual acquiescence the record in the prior case was considered as being fully before the court. In their brief in the present case the appellants say, in their Statement of Facts:

"In August, 1971, surveyors hired by the Appellee appeared on the disputed tract and began taking measurements and placing markers. The Appellants asserted their ownership of the land and the surveyors immediately left.

"On October 1, 1971, the Appellants filed suit in Trespass, Quare Clausum Fregit, alleging adverse possession from 1951. The jury found for the Appellants, but the Circuit Court granted a judgment N.O.V., because of a failure to show a sufficient transfer of adverse possession to Jesse N. Smith from his predecessor (Mortgage foreclosure sale) in 1953. The Court of Special Appeals affirmed and Certiorari was denied on January 29, 1975.

"On May 20, 1974, the Appellants filed the present suit. The Appellee had not attempted to gain possession, and had not entered the disputed tract at any time since the surveying incident of August, 1971. No legal action or counterclaim was

filed by Appellee to obtain an adjudication of their title."

It was vital to the position of Mr. and Mrs. Rosencrantz in the prior trespass case, and in the present equity case, that they be able to prove continuous adverse possession for more than twenty years. That record title has always been in Shields and its predecessors is not questioned, nor is the location of any boundary line in dispute. The claim of Mr. and Mrs. Rosencrantz depends solely upon adverse possession. The rights of Shields are to be found in its unquestioned record title and whatever constructive possession flows from that record title.

In the prior trespass case it appears that Mr. and Mrs. Rosencrantz proved satisfactorily that they had possessed the disputed property adversely and continuously since they took title in May of 1964. They also proved satisfactorily that their predecessor in title, Jesse N. Smith, occupied the disputed area continuously and adversely at least from May of 1954 to some unspecified time in the latter part of 1963. The occupancy by Mr. Smith was through a tenant. In the court's opinion which accompanied the order granting judgment n.o.v. for Shields in the trespass case, it was pointed out that there was doubt about the adverse occupancy by Smith between the time he took record title through the mortgage foreclosure sale in February of 1953 and the time his tenant went into possession in May, 1954. Judge Clapp also pointed out the gap in the evidence of possession between the latter part of 1963, when Smith's tenant terminated his possession, and May 1964, when Mr. and Mrs. Rosencrantz took title. The trial judge did not, however, find it necessary to determine whether those two periods constituted a break in the continuity of adverse possession. He held, correctly, that the adverse possession by Smith or his tenant could be tacked by Mr. and Mrs. Rosencrantz to their own adverse possession because there was evidence that when Smith sold the property to Mr. and Mrs. Rosencrantz he pointed out the boundaries to them on the ground as including the disputed area.

A general rule applicable to tacking by successive owners

is stated in *Sachs & Sons v. Ward*, 182 Md. 385, 35 A. 2d 161 (1943), where the Court of Appeals said, at 394-95:

"* * * appellants' only possibility of maintaining adverse possession would be by tacking on to their own use and occupancy that of their predecessors in title. This is precisely what this court had already decided cannot be done, the rule being that possession cannot be tacked to make out title by prescription where the deed by which the last occupant claims title does not include the land in dispute." (Citations omitted).

An exception to that general rule, however, was held by the Court of Appeals to be well recognized in other jurisdictions and was applied as the law of Maryland in *Freed v. Cloverlea Assn.*, 246 Md. 288, 228 A. 2d 421 (1967). One of the authorities there cited which clearly expresses the exception was *Ringstad v. Grannis*, 171 F. 2d 170 (9th Cir. 1948), in which that Court said, at 174:

"It is generally held that if, in connection with the conveyance of lands, there are circumstances showing an intent to transfer to the grantee the possession of other adjacent land occupied by the grantor and not covered by the deed, there is created such a privity that the grantee is permitted to tack the period of the grantor's occupancy to his own in establishing title by adverse possession to the land not mentioned in the deed. 'Where the deed is followed by the delivery of possession of the entire inclosure, it is sufficient evidence of a transfer of possession to raise the requisite privity between the parties.' *Rich v. Naffziger*, 255 Ill. 98, 99 N.E. 341, 343."

The basis for the judgment n.o.v. in favor of Shields in the trespass case was that there was no evidence of privity as to the disputed area between Jesse N. Smith and his predecessors in the title which he obtained through a mortgage foreclosure, which meant that the earliest date from which Mr. and Mrs. Rosencrantz could claim adverse

possession was 13 February 1953 or, more likely, May, 1954, when Smith's tenant went into possession. The trespass suit was filed by Mr. and Mrs. Rosencrantz on 1 October 1971, based on an alleged trespass by agents of Shields in August, 1971. Both the date of the trespass and the date of filing of suit were less than twenty years from 13 February 1953. Therefore, the court held, the possession by Mr. and Mrs. Rosencrantz and their predecessor, Smith, even if adverse and uninterrupted, did not continue long enough to establish title.

The bill of complaint initiating the present case was filed on 20 May 1974, more than twenty years from May, 1954, so that the only weaknesses as a matter of law in the position of Mr. and Mrs. Rosencrantz were the possible break in continuity of possession in 1963 and 1964, which we find it unnecessary to consider further, and the effect of the judgment against them in the trespass case.

Although the hearing held in the trial court on 18 September 1974 was intended to be on the issue of res judicata as raised by Shields in its answer, and the actual hearing may have been so limited, the memorandum arguments thereafter submitted by the parties covered the whole field of continuity of possession. In his opinion preceding dismissal of the bill of complaint, Judge Clapp properly recognized that res judicata was not the controlling legal principle. The outcome of the 1974 equity case did not turn solely on questions of what was or might have been decided in the prior trespass case between the same parties, but rather on the question of whether the adverse possession continued without interruption despite the first suit. As we have noted, the lower court held that the entry upon the disputed area by the agents of Shields [in August 1971], being lawful, terminated the continuity of the previous adverse possession.

In this appeal both parties have correctly chosen to focus their arguments on the element of continuity, but they take somewhat divergent views of the determinative issue. Appellants present this question:

"Did the circuit court err by dismissing appellants'

bill in equity on the ground that a trespass by agents of the appellee interrupted the continuity of the appellants' adverse possession and tolled the statute of limitations?"

The appellee poses the question this way:

"Did the Circuit Court err by dismissing the Appellants' Bill of Complaint in Equity on the grounds that the prior adjudicated law case effectively determined that the Appellee had possession of the land when it was determined to have the title?"

There is little need to discuss the general legal principles that apply in cases of adverse possession. In *Gore v. Hall,* 206 Md. 485, 112 A. 2d 675 (1955), the Court of Appeals stated the rule very succinctly when it said, at 490:

"In order to establish title to land by adverse possession under the Statute of 21 James I, ch. 16, which is in force in Maryland, the claimant must show that such possession was actual, notorious, exclusive, hostile, under claim of title or ownership, and continuous or uninterrupted for the period of twenty years. 2 *Alexander's British Statutes, Coe's Ed.,* 599-616; *Peper v. Traeger,* 152 Md. 174, 181, 136 A. 537; *Tamburo v. Miller,* 203 Md. 329, 100 A. 2d 818."

In *Goen v. Sansbury,* 219 Md. 289, 149 A. 2d 17 (1959), the Court said, at 295:

"To establish adverse possession, a claimant must show that the possession was actual, open, notorious, exclusive and continuous or uninterrupted for the statutory period of twenty years. *Bishop v. Stackus,* 206 Md. 493, 498; *Peper v. Traeger,* 152 Md. 174, 181."

Applicable statutory law, at the time of the entry upon the disputed area by the surveyors for Shields, and at the time

the trespass suit was filed, was found in Code, Article 57, Section 3A, which said, in part:

"No person shall commence an action for the recovery of any corporeal estate in land, leasehold or freehold, or the possession thereof, or make any entry thereon, unless such action is commenced or entry made within twenty years after the right to commence such action or make such entry shall have first accrued to himself or to the person or persons under whom he claims * * *." [1]

The court below held that the entry upon the disputed area by surveyors for Shields in August, 1971, broke the continuity of possession by Mr. and Mrs. Rosencrantz. We agree that the continuity of their possession was broken before it ripened into title, and that the bill of complaint in this case was properly dismissed, but we prefer to base that conclusion on a broader ground than the mere entry by the surveyors.

Meeting the basis of the lower court's decision squarely, and with considerable persuasive effect, appellants argue that the entry of the surveyors for Shields upon the disputed area was not a sufficient entry to interrupt the continuity of their adverse possession. In *Wickes v. Wickes*, 98 Md. 307, 56 A. 1017 (1904), the Court of Appeals, in holding that an adverse possession had not been interrupted by a claimed entry, said, at 328:

"All the authorities agree that an entry to have such effect must be an actual entry upon some part of the land within the period of limitations, and must evince that it is made with the clear and unequivocal intent to invade and challenge the

---

1. The corresponding provision, effective 1 January 1974, appears in Courts Article, § 5-103, which says:

"(a) In general. — Within 20 years from the date the cause of action accrues, a person shall:

(1) File an action for recovery of possession of a corporeal freehold or leasehold estate in land; or

(2) Enter on the land."

right of the holder of the adverse possession and to retake possession."

Citing *Wickes v. Wickes, supra,* and *Hub Bel Air, Inc. v. Hirsch,* 203 Md. 637, 102 A. 2d 550 (1954), it is said in 4 Tiffany, *The Law of Real Property,* § 1161 (3d ed. Callaghan & Co. 1975) that:

"It is well recognized that the running of the statute is interrupted by the owner's entry on the land, if, and only if, this is made openly and under claim of right, with a clearly indicated purpose of taking possession."

According to 2 C.J.S. *Adverse Possession,* § 171 (1972):

"It is the general rule in many jurisdictions that an entry, during the statutory period of limitations, by the true owner, or by another under his authority, will interrupt the running of the statute of limitations against the owner, provided such entry is made with intention to repossess . . . made known to the claimant in possession. . . ."

The character of the entry necessary to interrupt adverse possession is discussed in 2 C.J.S. *Adverse Possession,* § 173 (1972), where the writer says:

"A mere physical entry by the owner is not enough, for, in order to defeat another's adverse possession, the owner's entry must clearly indicate to the occupant that his possession is invalid and his right challenged. It must be open and notorious and bear on its face an unequivocal intention to take possession, and must be made under such circumstances that, by the use of reasonable diligence, the occupant may ascertain the right and claim of the entrant. The entry, it has been declared, must equal in dignity and character that required to initiate an adverse possession, that is, it cannot be accidental, casual, secret, or permissive."

With respect to entry to make a survey, the writer continues:

"A survey made at the instance of the true owner and with the intention of merely ascertaining the position of the land does not interrupt the continuity of the occupant's adverse possession. However, an entry to make a survey, accompanied by a purpose to take possession, will constitute an interruption."

And see 3 Am.Jur.2d, *Adverse Possession*, § 90 (1962):

"To toll the running of the statute of limitations by the owner's entry, the entry need not be made by the owner in person. It may be sufficiently effected by his agent or tenant or anyone who is authorized to act for him. * * * In all cases, however, the intent, as expressed, or evidenced by acts of ownership, is that which governs the effect of the entry. The mere act of going upon the land is not enough. The owner must assert his claim to the land or perform some act that would reinstate him in possession, before he can regain what he has lost. The conduct claimed by an owner to work an interruption of adverse possession must be such as would put an ordinary prudent person on notice that he actually has been ousted. Not every act by the owner on the land interrupts actual adverse possession. For example, the posting by the record owner of a 'notice to prevent easements' under a statute, while constituting an act of ownership and evidence bearing upon the continuity of adverse possession, does not necessarily, as a matter of law, interrupt such possession.

\* \* \*

"Even after a sufficient entry has been effected by the owner, if the disseisor still remains in possession as a wrongdoer, such possession will have the effect of a new disseisin."

In 5 Thompson, *Commentaries on the Modern Law of Real Property*, § 2552, at 576-78 (Grimes repl. 1957) the author says:

"As a general rule, an entry upon or possession of the lands claimed by another, which, in the first instance, would suffice to effect a disseisin or ouster of the real owner, will break the continuity of the holder claiming by adverse possession. Such an entry upon or occupation of the land by the true owner for any portion of the period of adverse possession by the claimant will, as a general rule, break the continuity, and destroy the adverse possession. Especially is this true where such entry is followed up by possession by the owner, although the adverse claimant continues in possession as before such entry. To have this effect the entry need not be by the owner in person, but it may be by his agent. Entry by the agent or licensee of the record owner of the land may be sufficient to interrupt the running of the statute. However, the reentry and consequent interruption of the possession must rise in dignity and character to that required to initiate an adverse possession. It is not every entry, however, by the owner that will destroy the adverse possession, but to effect this, he must assert his claim to the land by acts of ownership. * * * An entry on land by a person disseised, merely for the purpose of seeing if there is any evidence of an adverse occupation, is not, as a matter of law, conclusive evidence of an interruption of the disseisor's possession."

Whether the making of a survey will interrupt the continuity of adverse possession sufficiently to toll the running of limitations must necessarily be decided in each case according to the circumstances. The reported cases in other jurisdictions appear to support the general proposition that a survey, without more, is not enough.

In *Maysville & B.S.R. Co. v. Holton*, 100 Ky. 665, 39 S. W.

27 (1897), the court held that the making of surveys on behalf of a railroad which had obtained a right of way by deed failed to establish reentry sufficient to interrupt the continued and actual adverse possession of the occupants. Before the holder of record title can regain what he has lost, the court said, at 29, "[h]e must assert his claim notoriously and openly, or perform some act that will reinstate him in possession." The court concluded:

> "The mere entry for the purpose of survey, or to drive down stakes, is not sufficient to divest the occupant of title who holds the possession and claims the property, or to give notice to the occupying claimant that the company was asserting the right of way over his farm."

In *City of New Orleans v. Peterson*, 142 So. 2d 174 (La. App. 1962), the ownership of a strip of land which the City sought to expropriate was contested by two claimants — one claiming by record title, the other by adverse possession. The court held that the constructive possession of the titleholder did not oust the actual possession of the adverse claimant. A survey had been made during the period necessary to support the claim by adverse possession. However, the court noted, at 178, that the mere entry of a surveyor "for the purpose of establishing the corners of the squares was not in our opinion a disturbance of the possession of the railroad [adverse claimant]."

In *Alukonis v. Kashulines*, 97 N. H. 298, 86 A. 2d 327 (1952), the court held the evidence sufficient to support a jury verdict in favor of the adverse claimant where possession of the disputed strip passed uninterruptedly to him from his predecessors in title. At 329, the court ruled that the evidence of a survey on behalf of the titleholders was "not sufficient to establish as a matter of law such an exercise of dominion over the strip by its record owner as to interrupt the continuity of the adverse possession of plaintiff and her predecessors in title."

In *La Freniere v. Sprague*, 108 R. I. 43, 271 A. 2d 819 (1970), the court held that occupancy because of a mistaken

belief as to the location of the true boundary line was not fatal to a claim by adverse possession. Nor was the adverse claim defeated by the conduct of the record owners in having a survey made, placing marker stakes, and informing the parties in possession of their mistake where they immediately removed the stakes and continued to occupy the disputed area.

In *Illinois Steel Co. v. Budzisz*, 115 Wis. 68, 90 N. W. 1019 (1902), the continuity of adverse possession was held to have been interrupted as a matter of law. The court relied on a survey made on behalf of the record owner in conjunction with other acts by him, including acknowledgments by residents, apparently squatters, that they occupied by permission from him, as the true owner. The court found that the owner's entry was made with the intent of asserting his claim and was so public in character that the adverse claimant had ample notice of that intent. The court noted in particular that considerable time was consumed in making the survey, and that there were repeated entries by the owner.

Although the Court of Appeals of Maryland has never been called upon to consider the effect upon the continuity of adverse possession of an entry upon land by the record owner for the purpose of making a survey, the Court did consider the converse in *Beatty v. Mason*, 30 Md. 409 (1869). In that case, one of the acts shown to support a claim of adverse possession was that the adverse claimant had caused a survey to be made of the disputed property. The Court said, at 414:

> "A survey, unaccompanied by any other act of user and occupation, is not such a distinct and notorious act of possession as will justify the reasonable presumption of an ouster, or that the party went upon the land with a palpable intent to claim the possession as his own."

If entry by a record owner, in order to interrupt the continuity of adverse possession, must equal in dignity and character that which would be sufficient to initiate an

adverse possession if the land were owned by another, we doubt that the mere entry by agents for Shields upon the disputed land, standing alone, was a sufficient entry, under Code, Art. 57, § 3A, to interrupt the possession of Mr. and Mrs. Rosencrantz. We do not decide this question, however, because we are satisfied that the adverse possession was interrupted by the successful defense of the subsequent trespass suit.

If an action of ejectment, trespass to try title, or other appropriate action for the recovery of its corporeal estate in the land had been commenced *by*, rather than *against*, Shields, the *filing* of the action on 1 October 1971 would have interrupted the continuity of the adverse possession. *Id.* But the interruption did not take place with the commencement of the action, because the filing of suit by Mr. and Mrs. Rosencrantz was not an assertion of rights by Shields. It was the *defense* by Shields to the suit which constituted an assertion by it of an opposing right. It was that opposing claim by Shields which, when successfully prosecuted to judgment, interrupted the adverse possession.

The only remaining point which requires notice is that, even after it was adjudicated to hold title superior to that of appellants, Shields has not physically retaken possession. Mr. and Mrs. Rosencrantz have remained as before. We hold that this failure of Shields to reenter did not impair its right to do so. At most, the appellants started over again, from zero, on a new period of adverse possession.

The author says in 5 Thompson, *Commentaries on the Modern Law of Real Property*, § 2552, at 572-73 (Grimes repl. 1957):

> "Possession by the adverse claimant must be uninterrupted for the full statutory period, for to break effectively the possession at any time before the period has fully expired will arrest the running of the statute. The moment the running of the statute of limitations is interrupted the law restores the possession to the holder of the legal title, and the claimant by adverse possession must begin de novo. Upon interruption of the possession

before completion of the statutory period, the possession of the true owner constructively intervenes, and should the claimant resume possession, the statute of limitations begins to run at the date of such resumption, and must run for the full statutory period thereafter in order to give the claimant title. If the possession be interrupted, either by fraud or force, or by process of law, the statute begins to run only from the time of reentry."

See 3 Am.Jur.2d *Adverse Possession,* § 84 (1962), where it is said:

"The bringing by a claimant in adverse possession of land of an action involving title thereto which is based on the existence of a right in another is such a recognition of that right as will arrest the running of the statute of limitations in favor of the occupant and against such right."

In the same text it is said, in § 91:

"Where, in an action involving the title to land, one of the parties claims title by adverse possession, an adverse judgment though not put into effect by writ of possession breaks the continuity of his possession, and though he thereafter remains in possession of the land he is estopped by the judgment from claiming title to the land so long as the judgment remains in effect."

In 2 C.J.S. *Adverse Possession,* § 191 (1972), it is stated:

"Where suit is brought by claimant concerning his title or right of possession, defendant's answer disputing the plaintiff's title and claiming ownership may constitute an interruption of the continuity of adverse possession; but it has been held that an unsuccessful denial of title of plaintiff does not break the continuity of adverse possession."

and it is further stated, § 192:

> "A final judgment against the adverse claimant, in possession in a suit of trespass to try title, although not disturbing actual possession will interrupt the running of limitations in favor of such occupant and all persons claiming from or under him * * *."

It may be helpful to summarize what we have discussed at considerable length in this opinion.

The 1971 trespass case decided that the appellee had good title to the disputed land, and rejected the claim of the appellants that they had acquired title by adverse possession.

In the 1974 equity case the entire record in the 1971 trespass case was properly before the court.

The entry upon the disputed land by the agents of the record owner in August 1971 did not, as a matter of law, interrupt the adverse possession.

The filing of the trespass case by the adverse claimants in possession, on 1 October 1971, did not interrupt their adverse possession.

Opposition by the record owner by way of defense in the trespass suit did interrupt, conditionally, the continuity of the adverse possession.

The conditional interruption became absolute with the judgment favorable to the record owner.

That judgment carried with it constructive possession by the record owner, and wiped the slate clean of prior adverse possession.

When the appellants filed their bill of complaint in the present case their adverse possession had existed about seven and one half months at most, and the complaint was properly dismissed.

*Decree affirmed.*
*Appellants to pay costs.*