# SOLOMONS ISLAND YACHT CLUB, INCORPORATED
## *v.* PAUL X. ELLIOTT ET AL.

[No. 512, September Term, 1975.]

*Decided June 4, 1976.*

The cause was argued before ORTH, C. J., and THOMPSON, POWERS and MOORE, JJ.

*Thomas A. Rymer* for appellant.

*Allen S. Handen,* with whom were *Alan W. Bernstein* and *Handen & Singerman* on the brief, for appellees.

Powers, J., delivered the opinion of the Court.

Appellant here, Solomons Island Yacht Club, Incorporated, sued Paul X. Elliott and Mary L. Elliott, appellees here, in the Circuit Court for Calvert County, for trespass to real estate. The suit put in issue the title of the parties to a disputed strip of land along the common boundary of adjoining parcels in Solomons Island owned by the respective parties. The declaration contained a technical claim for damages, but no damages were sought. The suit was a typical use of the common law action of trespass q.c.f. to try the issue of a disputed title to real estate. 1 Poe, *Pleading and Practice* (Tiffany ed. 1925) § 244, *Rosencrantz v. Shields, Inc.*, 28 Md. App. 379, 346 A. 2d 237 (1975).

After the parties thought they had reached a settlement, a judgment was entered by agreement. The settlement was aborted, however, and upon motion and hearing, the judgment was stricken and the case was restored to the trial calendar.

Trial was held before a jury and Judge Perry G. Bowen, Jr., in the Circuit Court for Calvert County. At the close of all of the evidence the trial judge denied a motion by the Elliotts for a directed verdict in their favor, and reserved ruling on a motion by the Yacht Club for a directed verdict in its favor. Instructions were given by the court and arguments were made by counsel. The jury returned a verdict for the defendants. After the court denied a motion by the Yacht Club for judgment n.o.v. a final judgment was entered on the verdict. The appeal is from that judgment.

The sole issue raised here by the Yacht Club is whether the court erred in denying its motion for a directed verdict. We hold that it was error to deny the motion. We shall reverse the judgment appealed from, and enter a final judgment in favor of the appellant.

A review of the evidence shows that the Yacht Club and the Elliotts each own a parcel of land fronting on Route #2 in Solomons Island. The Elliott parcel lies immediately south of the Yacht Club parcel along the road frontage. The Yacht Club parcel extends several hundred feet to the rear, which

borders on Mill Creek. The Elliott parcel extends back from the public road a distance, according to one measurement, of 76 feet, and, according to another measurement, of 78.51 feet. The width of the Elliott parcel is approximately 60 feet, or slightly more, depending on the resolution of the dispute.

Evidence of the titles and of the location of both parcels came in through a Title Abstractor and through two Registered Land Surveyors, all of whom were conceded to be experts. There was no material dispute as to any of their evidence.

One of the exhibits is a plat prepared by a registered land surveyor which purports to show Lots 17, 18, 19, 20, and 21, as laid out in a plat prepared about 1870 by one Thomas R. Grover. The Grover plat is not now available in the Land Records and no known copy exists.[1] All of those lots front on a public road, now Maryland Route 2, and extend back to Mill Creek, a distance on the order of 250 to 300 feet. We are concerned in this case only with Lots 19 and 20. The frontage on the public road of the Yacht Club property is made up of most, but not all, of the original frontage of Lot 19. The frontage of the Elliott parcel, immediately south, is made up of all of the original frontage of Lot 20, plus part of the original frontage of Lot 19. How much of the Lot 19 frontage is the subject of the dispute in this case.

---

1. The witness reconstructed the lots from descriptions available in the Land Records.

We append as a part of this footnote a sketch of parts of Lots 19 and 20 as they appear on the exhibit plat. The area in dispute is the strip lying between the lines we have designated as A-A and B-B. On the exhibit the strip is colored red. The disputed strip is 6.85 feet wide, and runs the depth of the Elliott parcel. Line B-B is the location of a fence which had been there as long as anyone could remember, until the Elliotts removed it in 1973. The strip between line B-B and the line dividing Lots 19 and 20 is shown in green on the exhibit. That strip is a part of Lot 19, and although the deeds in the Elliott chain refer only to Lot 20, it is conceded to belong to the Elliotts. We note that Lot 20 was said to have a width of three perches, or 49.5 feet, and that the conveyance creating the Elliott parcel called for $3\frac{1}{4}$ perches, or 53.625 feet. It may be that the undisputed Elliott portion of Lot 19 is 6.38 feet instead of $\frac{1}{4}$ perch, or 4.125 feet, and the strip in dispute is 6.85 feet, instead of $\frac{1}{2}$ perch, or 8.25 feet because of the location of the old fence line.

ROUTE #2

The last common titleholder was Fuller E. Stevens and wife, who by deed dated 25 August 1881 conveyed to Emma Sedwick Lots 20 and 21, as shown on the Grover plat and as described by courses and distances in the deed, but excepting from that conveyance "that portion of Lot No. 20 which was conveyed by the aforesaid Fuller E. Stevens to Ada A. Crockett by deed dated the 27th day of October 1879". The deed from Mr. and Mrs. Stevens recited that he obtained Lots 20 and 21 by deed from Philip W. Snowden, trustee, in 1875.

By another deed of the same date, Mr. and Mrs. Stevens and others conveyed to Emma Sedwick their right, title, interest, and estate in Lot No. 19, as shown on the Grover plat, also described in the deed by courses and distances.

The evidence also disclosed that many land records of Calvert County had been destroyed by a fire in the Courthouse in 1882, and the two deeds we have just referred to were re-recorded thereafter. The conveyance of a part of Lot 20 to Ada A. Crockett was not re-recorded, but a description is available from a later conveyance.

The evidence contains a deed made on 10 January 1888 by Ada A. Crockett and William H. Crockett to William E. Littrell, conveying "the same land which the said Ada A. Crockett obtained from Fuller E. Stevens by deed dated on the 27th day of October 1879", and describing the property as:

"Beginning for the same at a stone planted on the North west corner of Lot No 20 and running as follows, North 68° East 4 perches to a stone, thence South 24° East 3¹/₄ perches to a Stone, thence South 68° West 4 perches to a stone, thence North 24° West 3¹/₄ perches to the beginning (being a part of Lot No 20) in fee simple." [2]

2. It is an irreconcilable inconsistency that the parcel is part of Lot 20, and begins at the northwest corner of Lot 20, but is wider by ¹/₄ perch. The encroachment could be into either adjoining lot, but the line of possession shows it was into Lot 19.

## The Yacht Club Title

Pursuant to a decree in equity, Joseph S. Wilson, as trustee, conveyed to William Kopp, by deed dated 12 February 1889, the real estate owned by Emma Sedwick at the time of her death, described in the deed as Lots 21, 19, and part of 20, as shown on a plat made by Thomas R. Grover in 1870.

We follow the conveyance by Joseph S. Wilson to William Kopp down through the records as the source of the Yacht Club title to the property in dispute. After the death of William Kopp in May, 1908, intestate, his heirs, by deed dated 14 June 1916, conveyed to William H. Kopp Lots 19, 20, 21 and 22, as shown on the Grover plat, excepting from Lot 20 that portion of Lot 20 conveyed by Stevens to Crockett in 1879. This deed refers to the first three lots as having been conveyed to William Kopp by the 1889 deed. By two straw deeds dated 30 March 1937 William H. Kopp, joined by his wife, conveyed all of the property previously conveyed to William H. Kopp, along with other property, to William H. Condiff, who, joined by his wife, reconveyed to William H. Kopp and Maude Kopp as tenants by the entireties. By deed dated 28 October 1944, William H. Kopp and Maude Kopp conveyed to Solomons Island Yacht Club, Incorporated, a part of the land conveyed to them by the Condiff deed, by a description which, in part, follows the east boundary and the north boundary of what was then described as William E. Selby's lot. There has been no conveyance out by the Yacht Club since its acquisition of the property by this deed.

## The Elliott Title

We now follow the Crockett to Littrell conveyance, which first appeared as an exception of part of Lot 20 in the deed from Stevens to Sedwick, down to the present as the source of the Elliott title.

Title to that part of Lot 20 conveyed to Ada A. Crockett by Fuller E. Stevens, by deed of 27 October 1879, and which was conveyed by Ada A. Crockett and husband to William E.

Littrell by deed dated 10 January 1888, was, by deed dated 31 March 1900, conveyed by William E. Littrell and Annie V. Littrell, his wife, to Joseph C. Webster. The deed contained the following description and reference:

> "Beginning for the same at a stone planted on the Northwest Corner of Lot No 20 and from thence running North 68° East 4 perches to a stone; thence South 24° East 3³/₄ perches to a stone; thence South 68° West 4 perches to a stone; thence North 24° West 3³/₄ perches to the place of beginning (being a part of Lot No. 20). The same being the lot or parcel of land which William E. Littrell obtained from William Crockett and wife by deed dated the tenth day of January in the year 1888 * * *."

Subsequent conveyances of the same property were made by Joseph C. Webster to Benjamin W. Denton by deed dated 3 August 1904; by Benjamin W. Denton and wife to William E. Selby by deed dated 15 June 1926; by William E. Selby and wife to William Preston Lore and wife by deed dated 6 December 1946; by William Preston Lore and wife by deed dated 30 October 1962 to Paul X. Elliott and Mary L. Elliott.

In each of these deeds the property is described as being a part of Lot No. 20 and each grantor states that it is all and the same lot or parcel which was granted to him.

## The Record Title

It is perfectly apparent that the root of the dispute in this case was the description in the 1900 deed from Littrell to Webster which gave the length of the front and back lines of the parcel as 3³/₄ perches, rather than 3¹/₄ perches, as in the 1888 deed to Littrell from Crockett, and in the 1879 deed to Crockett from Stevens, the last common owner. We may assume that this discrepancy was an error made in copying the description from the old deed to the new, but even if the change had been intentional, the effect under the facts in this case would be the same.

After a survey made for them by Harvey L. Dorsey,

registered land surveyor, in July 1972, Mr. and Mrs. Elliott executed and recorded a deed to themselves, describing the property by courses and distances as shown on the Dorsey survey, and reciting further that it was "all and the same land the within grantors obtained from William Preston Lore, et ux, by Deed dated October 30, 1962 * * *."

Mr. Dorsey was called by the Yacht Club as a witness. He identified the plat of his survey, and it was admitted in evidence. It contains Mr. Dorsey's certification that he carefully made a transit-tape survey of the Elliott property, and the statement, "Surveyed by lines of possession & deed." He testified that he went to the Land Records and got their deed, and went to the property to do the field work. He checked the line on the south side of the Elliott parcel with a fence line and a survey of the property adjoining on the south. He said:

> " * * * It agreed perfectly with this. Since this line was so established seventy-five feet from the alley from the survey that McCrone did, I took the Deed distance of three and three-quarter perches, extended it out for the Elliott property which there was a fence here, I over ran the fence. However, this fence line was simply a line of possession. This had no survey on it in 1944, it was simply done by no metes and bounds description. However, this property did have a survey for the metes and bounds description. I went out to Deed angle and intersected it with the State Road."

* * *

> "Q Did you look at just their Deed?
>
> A I went back two or maybe three Deeds.
>
> Q Did you find any Deed that said other than three and three-quarters?
>
> A No I didn't.
>
> Q So you used three and three-quarters?
>
> A I used three and three-quarters.

Q Now how far — could you tell us what the line of possession was at that time?"

* * *

"A It was a line of fence."

* * *

"Q What was it at that time just to the north of the fence?

A Just to the north of the fence that was in — in there at the time was actually a grass strip.

Q And next to the grass strip was basically a drive way?

A Yes.

Q And who property was that?

Mr. Handen: Objection.

Judge Bowen: Overruled.

A That — well, the driveway was being used by the Solomons Island Yacht Club.

Q All right. Now when your survey then — you surveyed the property and how far did your point come north of the fence line?

A Of the fence line 6.85 feet."

Neither the 1900 deed from Littrell to Webster, nor the 1972 deed from the Elliotts to themselves, could, merely by the use of a different description, convey a record title greater than the grantors had.

In *Kelly v. Nagle*, 150 Md. 125, 132 A. 587 (1926), the Court of Appeals considered the effect of a deed of easement to take water from a spring, as against a complaint of a lower riparian owner on the stream fed by the spring. The Court, through Judge W. Mitchell Diggs, said, at 136:

"It will be seen that the deed of the easement to Jennie Nagle is in proper form and conveys to her, her heirs and assigns, the right to take the water from the spring by means of a three-quarter inch pipe, but even though it is in proper form, it

conveys nothing to the grantee except what the grantor owned and was entitled to convey. If A conveys to B, by deed, a fee simple title to Black Acre, when A does not own more than a life estate, nothing more than the life estate passes, even though the deed be sufficient in form to convey a fee simple, for the apparent and controlling reason that A could convey no more or greater interest than he possessed."

With respect to *record title* to the disputed strip of land, that strip was not included in the Elliott parcel when the parcel was created by the Stevens conveyance to Crockett in 1879. There has been no subsequent conveyance of record from any owner of the disputed strip to an owner of the Elliott parcel. The conclusion is inescapable as a matter of law that the record title of the Elliotts does not now include, and never has included, the strip in dispute in this case.

## Title By Prescription

Both parties devoted much time and effort in the trial court and here in pursuit of the will-o'-the-wisp of adverse possession. There simply was no evidence in the case sufficient to generate an issue of title by adverse possession. The Yacht Club alleged and proved trespass only upon that part of Lot 19 north of the location of the old fence line, thus limiting the width of the disputed strip to 6.85 feet. The fence had been at the same location for many years. The land surveyor employed by the Elliotts located the line on his plat as the line of possession.

The action of the Elliotts in removing the fence in 1973 changed nothing. Whatever the Elliotts may have done after they acquired their parcel in 1962 could not establish a title by prescription without tacking to adverse possession by their grantor. Mr. Lore, who bought the parcel in 1946 from Shelby and sold it to the Elliotts in 1962, testified that he had been familiar with the property since about 1905, and that the same fence had been there since 1920. Asked about the deed description of the lot, he said, "Well it had

whatever was in the fence. I don't know what the perches were." He said that he had put in a septic system, and all of it was south of the fence line. He also said that the Yacht Club over the past years had used the property just north of the fence line, and had a sign erected at the corner of the lot, two or three inches from the fence.

There was no issue of fact to submit to the jury. The Yacht Club's motion for a directed verdict should have been granted.

> *Judgment reversed.*
> *Judgment entered in favor of Solomons Island Yacht Club, Incorporated, and against Paul X. Elliott and Mary L. Elliott.*
> *Appellees to pay costs.*